**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MINOR HUMBERTO PEREZ-VARGAS,
　　　　　　　　　*Petitioner,*

v.

ALBERTO R. GONZALES,
　　　　　　　　　*Respondent.*　⎱　No. 05-2313

AMERICAN IMMIGRATION LAW
FOUNDATION,
　　*Amicus Supporting Petitioner.*

On Petition for Review of an Order of
the Board of Immigration Appeals.
(A29-760-997)

Argued: November 28, 2006

Decided: February 22, 2007

Before KING, SHEDD, and DUNCAN, Circuit Judges.

Petition for review granted; vacated by published opinion. Judge Shedd wrote the opinion, in which Judge King and Judge Duncan joined.

## COUNSEL

**ARGUED:** David J. Rothwell, O'TOOLE, ROTHWELL, NASSAU & STEINBACH, Washington, D.C., for Petitioner. Carol Federighi,

UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent. **ON BRIEF:** Jeffrey B. O'Toole, O'TOOLE, ROTHWELL, NASSAU & STEINBACH, Washington, D.C., for Petitioner. Peter D. Keisler, Assistant Attorney General, M. Jocelyn Lopez Wright, Assistant Director, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent. Trina Realmuto, Mary Kenney, Washington, D.C., for Amicus Supporting Petitioner.

---

**OPINION**

SHEDD, Circuit Judge:

Minor Humberto Perez-Vargas petitions for review of an order of the Board of Immigration Appeals ("BIA") holding that an immigration judge ("IJ") lacks jurisdiction to determine whether an approved visa petition remains valid, pursuant to § 204(j) of the Immigration and Nationality Act ("INA"), when the holder of the visa petition has changed employment. Because we find that this determination lies within the jurisdiction of an IJ, we grant the petition for review and vacate the BIA's decision to the contrary.

I

Congress has provided that certain aliens who are present in the United States and employed by American employers may apply to adjust their status to that of lawful permanent residents. 8 U.S.C. § 1255. However, before an alien's status may be adjusted, (1) the alien must apply for adjustment, (2) he must be eligible to receive an immigrant visa and be otherwise admissible, and (3) a visa must be immediately available at the time the application is filed. 8 U.S.C. § 1255(a)(1)-(3). To satisfy subsections (2) and (3), the alien must take several steps.[1] First, the alien must obtain a certificate from the

---

[1]While an alien is eligible for adjustment of status based on considerations other than employment, we focus exclusively on the adjustment process in the context of employment because that is the sole ground relevant here.

Department of Labor indicating that qualified American workers have been recruited for his job but none is available and that employment of an alien worker will not adversely affect wages and working conditions of similarly employed American workers. 8 U.S.C. § 1182(a)(5)(A)(i). Second, the alien's employer must file a visa petition with the Department of Homeland Security ("DHS"), which DHS must approve. 8 U.S.C. § 1154(a)(1)(F). Third, the alien must wait until the Department of State determines that his visa is immediately available based on the priority of the date on which the labor certification application was filed. 8 C.F.R. § 1245.1(g). Only then is an alien eligible for adjustment of status based on employment.

However, even when an alien is eligible for adjustment of status, he can lose his eligibility under certain circumstances. As relevant here, this can occur when the alien is no longer employed by the employer who submitted the approved visa petition or when he is no longer employed in the job for which the visa petition was approved. 8 C.F.R. § 205.1(a)(3)(iii). In such circumstances, the alien must begin again the process for adjustment of status.

Due to the length of the application process and in order to allow job flexibility, Congress enacted INA § 204(j), 8 U.S.C. § 1154(j), in 2000. This section provides:

> A petition under subsection (a)(1)(D)[2] of this section for an individual whose application for adjustment of status pursuant to section 1255 of this title has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed.

---

[2]The cross-reference to subsection (a)(1)(D) appears to be in error. Subsection (a)(1)(F) seems to be the intended subsection, given Congress' redesignation of subsection (a)(1)(D) as subsection (1)(1)(F) by Section 1503(d)(1) of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464, 1521.

Section 204(j), therefore, provides relief to the alien who changes jobs after his visa petition has been approved. More specifically, this section permits an application for adjustment of status to remain pending when (1) it has remained unadjudicated for at least 180 days, and (2) the alien's new job is in the same or similar occupational classification as the job for which the visa petition was approved. As a result, an alien who is covered by § 204(j) is not forced to recommence the lengthy adjustment of status process.

II

Perez-Vargas, a citizen of Guatemala, arrived in the United States as a nonimmigrant visitor in January, 1991, with authorization to remain in the country until April 8, 1991. After overstaying his visa, he filed an application for asylum with the Immigration and Naturalization Service ("INS") on May 23, 1991. At subsequent hearings before an IJ, Perez-Vargas admitted that he was removable from the country, abandoned his application for asylum, and requested a continuance so that he could substitute an application for adjustment of status. Perez-Vargas contended that he was entitled to adjustment of status based on a visa petition — filed by his employer and awaiting imminent approval — which would authorize him to remain in the country as an immigrant worker. The IJ granted the continuance, and the visa petition was approved on May 28, 2001. Perez-Vargas then filed his application for adjustment of status and appeared before the IJ again on July 12, 2002. By this time, Perez-Vargas had been fired from his prior job (the job for which the visa petition had been approved) and had secured new employment. Perez-Vargas claimed, however, that his visa petition remained valid pursuant to § 204(j) because his new job was substantially similar to the job for which the visa petition had been granted.

On July 17, 2002, after hearing argument, the IJ held that he lacked jurisdiction to determine the continuing validity of a visa petition pursuant to § 204(j). The IJ therefore denied Perez-Vargas' application, found him removable, and ordered voluntary departure with an alternate order of removal. DHS appealed the order of voluntary departure to the BIA, and Perez-Vargas cross-appealed the denial of his application. The BIA vacated the order of voluntary departure but denied Perez-Vargas' appeal, finding that an IJ lacks jurisdiction to make a

§ 204(j) determination. After Perez-Vargas moved for reconsideration, pointing out that the BIA's decision conflicted with a prior unpublished opinion, the BIA reaffirmed in a published opinion its holding that an IJ lacks jurisdiction under § 204(j).[3] This petition for review followed.[4]

### III

We review de novo the legal conclusions of the BIA, including issues of statutory construction. *Nwolise v. INS*, 4 F.3d 306, 309 (4th Cir. 1993). In doing this, we must first ascertain "whether Congress has directly spoken to the precise question at issue." *De Osorio v. INS*, 10 F.3d 1034, 1037 (4th Cir. 1993). If so, our inquiry ends and we, as well as the BIA, "must give effect to that unambiguously expressed intent." *Id.* at 1038. However, if the statutes are silent as to the specific issue to be resolved, we must determine whether the BIA's interpretation is based on a permissible construction of the statute. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). We likewise give substantial deference to an agency's interpretation of its own regulations. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

---

[3]Although not dispositive in our consideration of this petition, we note that courts typically look askance at an agency's unexplained deviation from a prior decision, even when the prior decision is unpublished. *See, e.g., Baltimore Gas & Elec. Co. v. Heintz*, 760 F.2d 1408, 1418-19 (4th Cir. 1985); *Davila-Bardales v. INS*, 27 F.3d 1, 6 (1st Cir. 1994). Indeed, when an agency fails to present a reasoned basis for departing from a previous decision, "it may be deemed to have acted arbitrarily." *Baltimore Gas*, 760 F.2d at 1419. Here, the BIA merely explained that its prior decision "is not . . . precedent[.]" J.A. 831.

[4]The Government asserts that we lack jurisdiction over this petition for review because the BIA remanded this matter to the IJ rather than entering a final order of removal. We reject this assertion. The BIA's opinion, read as a whole, indicates that the remand to the IJ was for the purpose of determining whether Perez-Vargas is entitled to voluntary departure. In such circumstances, there is a final order of removal for purposes of appeal and we have jurisdiction over the petition for review. *Saldarriaga v. Gonzales*, 402 F.3d 461, 466 n.2. (4th Cir. 2005).

Perez-Vargas contends that the BIA's conclusion that an IJ lacks jurisdiction to make § 204(j) determinations conflicts with the clear language of the statute. In making this argument, Perez-Vargas asserts that the BIA misapprehended the question before it by distinguishing between jurisdiction to adjudicate an application for adjustment of status and jurisdiction to make a § 204(j) determination. We agree.

Section 204(j) is not a jurisdictional statute, and it does not provide for an independent administrative process. Rather, it applies to an "individual whose application for adjustment of status . . . has been filed and remained unadjudicated for 180 days or more[.]" The relevant adjudication, then, is of entitlement to adjustment of status, and jurisdiction is founded not on § 204(j) but on 8 U.S.C. § 1255(a)(2)-(3), which provides that the Attorney General may adjust the status of an otherwise admissible alien who "is eligible to receive an immigrant visa" and for whom "an immigrant visa is immediately available." The Attorney General has, subject to several non-relevant exceptions, vested IJs with exclusive jurisdiction over applications for adjustment of status:

> In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has *exclusive jurisdiction* to adjudicate any application for adjustment of status the alien may file.

8 C.F.R. § 1245.2(a)(1) (emphasis added).

Because an IJ has "exclusive jurisdiction" to adjudicate an application for adjustment of status, he necessarily has jurisdiction to make a § 204(j) determination, which is simply an act of factfinding incidental to the adjustment of status process. *Cf.* 8 C.F.R. § 1240.1(a)(1)(iv) (providing that an IJ has authority "[t]o take any other action consistent with applicable law and regulations as may be appropriate"); *In re H-N*, 22 I&N Dec. 1039 (BIA 1999) (holding that an IJ's jurisdiction to determine admissibility necessarily implies that he has jurisdiction over various forms of relief). Indeed, absent the authority conferred by § 204(j), it would be difficult if not impossible for an IJ to carry out his statutory duty of determining whether an alien "is eligible to receive an immigrant visa" when the continuing

validity of an approved visa petition is at stake due to a change in employment. Accordingly, it is clear that the factfinding mandated by § 204(j) is a necessary part of the process by which IJs adjudicate applications for adjustment of status.

Section 204(j) confirms this conclusion. Section 204(j) broadly applies to an "individual whose application for adjustment of status . . . has been filed and remained unadjudicated for 180 days or more" and who has an approved visa petition. By its terms, § 204(j) does not distinguish between those aliens whose adjustment applications are pending before DHS and those aliens whose adjustment applications are required to be filed with an IJ. Yet the BIA's interpretation would make exactly this distinction; moreover, it would effectively deny the benefits of § 204(j) to those aliens who are in removal proceedings. This is so because, under the BIA's interpretation, an alien in removal proceedings cannot invoke the protections of § 204(j) before the IJ but, instead, must seek administrative closure of the removal proceedings and ask DHS to determine the continuing validity of his visa petition pursuant to § 204(j). However, because administrative closure requires the consent of DHS, the alien's access to § 204(j) lies within the discretion of the government. If DHS were to refuse the alien's request for administrative closure — as it did in this case — the alien would be unable to avail himself of the process which Congress provided in § 204(j). This result is contrary to the plain language of the statute, which applies to all aliens who have an application for adjustment of status pending and who otherwise satisfy the statute's terms.

IV

In sum, we conclude that the statutory jurisdiction over applications for adjustment of status which is unambiguously vested in IJs necessarily encompasses jurisdiction to make the factual findings provided for in § 204(j). In addition, § 204(j) itself provides benefits to a broad class of aliens, including those aliens in removal proceedings. Because the BIA's decision is in conflict with these statutes, we grant the petition for review, vacate the order of the BIA, and remand for further proceedings consistent with this opinion.

*PETITION FOR REVIEW GRANTED; VACATED*