**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EZEKIEL OLUFEMI OGUNDIPE,
Reverend,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

*Respondent.*

No. 07-1075

EZEKIEL OLUFEMI OGUNDIPE,
Reverend,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

*Respondent.*

No. 07-1592

On Petitions for Review of Orders of the
Board of Immigration Appeals.

Argued: May 14, 2008

Decided: September 2, 2008

Before TRAXLER, GREGORY, and SHEDD,
Circuit Judges.

Petitions denied by published opinion. Judge Shedd wrote the opinion, in which Judge Traxler joined. Judge Gregory wrote a dissenting opinion.

---

**COUNSEL**

**ARGUED**: David Christopher Drake, JOHNSON & ASSO-CIATES, PC, Arlington, Virginia, for Petitioner. Justin R. Markel, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent. **ON BRIEF:** Randall L. Johnson, JOHNSON & ASSOCIATES, PC, Arlington, Virginia, for Petitioner. Peter D. Keisler, Assistant Attorney General, Civil Division, Francis W. Fraser, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

SHEDD, Circuit Judge:

Ezekiel Olufemi Ogundipe, a native and citizen of Nigeria, petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal and ordering his voluntary departure from the United States, and of the BIA's order denying his motion for reconsideration. Ogundipe contends that he is eligible to adjust his status without leaving the United States because he is a "grandfathered alien" who was the beneficiary of a special immigrant visa petition filed before April 30, 2001. The immigration judge ("IJ") and the BIA concluded that the visa petition on which Ogundipe relies was not "approvable when filed" and therefore denied his application to adjust status. Finding no error, we deny his petitions for review.

I

Ogundipe was admitted to the United States as a nonimmigrant B2 visitor on December 31, 1994. He overstayed his visa, which expired on June 30, 1995. In August 1997, He Cares Fellowship ("HCF"), a church located in Adelphi, Maryland, filed an I-360 Petition for Amerasian, Widow, or Special Immigrant Visa on Ogundipe's behalf (the "HCF Petition"), asserting that Ogundipe qualified for a "special immigrant" visa as a religious worker, as defined in 8 U.S.C. § 1101(a)(27)(C) (1997). Upon receipt of the HCF Petition, the Immigration and Naturalization Service ("INS")[1] requested additional information from HCF in a detailed letter identifying numerous evidentiary deficiencies in the HCF Petition. Specifically, the INS requested (1) evidence establishing that Ogundipe had two years of full-time work experience in religious work prior to August 1997; (2) evidence establishing that Ogundipe was authorized to conduct religious worship; (3) evidence establishing that Ogundipe would be employed full time in religious work, including Ogundipe's job title, description, commencement and termination dates of employment, weekly hours required, and wage and benefits offered; (4) evidence that HCF was able to pay the offered wage; (5) evidence of the number of members of HCF; (6) a list of HCF's salaried employees; and (7) evidence of HCF's net and gross annual income for 1995 and 1996. HCF failed to respond fully to the INS's requests, and the INS denied the petition. HCF appealed but failed to submit a brief; consequently, the appeal was dismissed.

In June 2001, Ark of Salvation International Church of Christ ("AS"), located in New Carrollton, Maryland, submitted a second I-360 petition (the "AS Petition") on Ogundipe's behalf. Like the HCF Petition, the AS Petition sought a visa

---

[1]On March 1, 2003, the INS became the Bureau of Citizenship and Immigration Services. We use the term "INS" in this opinion to refer to both agencies.

for Ogundipe on the basis that he qualified as a special immigrant religious worker, specifically, the Senior Pastor of AS. The AS Petition was granted in 2002.

In 2004, the INS initiated removal proceedings against Ogundipe for remaining in the United States longer than permitted. Ogundipe then filed an Application to Register Permanent Residence or Adjust Status, based on § 245(i) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1255(i). Section 245(i) permitted certain aliens who were otherwise ineligible to adjust their status — such as an alien, who, like Ogundipe, "continue[d] in or accept[ed] unauthorized employment prior to filing an application for adjustment of status" — to pay a penalty and have their status adjusted without having to leave the United States. Section 245(i) expired as of April 30, 2001, except for those aliens who are "grandfathered." "Grandfathered alien" is defined in 8 C.F.R. § 1245.10(a) to include "an alien who is the beneficiary . . . of . . . [a] petition for classification," such as an I-360 petition, "which was properly filed with the Attorney General on or before April 30, 2001, and which was approvable when filed."[2] "Approvable when filed" is in turn defined in § 1245.10(a)(3):

> Approvable when filed means that, as of the date of the filing of the qualifying immigrant visa petition under section 204 of the Act . . . , the qualifying petition . . . was properly filed, meritorious in fact, and non-frivolous ("frivolous" being defined herein as patently without substance). This determination will be made based on the circumstances that existed at the time the qualifying petition or application was filed.

---

[2]Section 1245.10(a)(2) defines "properly filed" to mean that "the application was physically received by the [INS] on or before April 30, 2001, or if mailed, was postmarked on or before April 30, 2001, and accepted for filing as provided in § 103.2(a)(1) and (a)(2) of 8 C.F.R. chapter I." The parties agree that the HCF Petition was properly filed.

Ogundipe argued in the removal proceedings that he was grandfathered on the basis of the HCF Petition and therefore eligible to adjust his status without leaving the United States. The IJ disagreed, finding that the HCF Petition was not "meritorious in fact" because there had never been a prima facie showing that Ogundipe was eligible for classification as a special immigrant. The IJ noted that the ultimate denial of the HCF Petition by the INS, standing alone, did not preclude a finding that the petition was approvable when filed. Nevertheless, she concluded that numerous evidentiary deficiencies in the petition, which HCF never remedied despite the INS's request for additional information, demonstrated that the HCF Petition was not meritorious in fact at the time it was filed. Accordingly, the IJ denied Ogundipe's application for adjustment of status, but granted his alternative request for voluntary departure.

Ogundipe appealed to the BIA, which dismissed his appeal. The BIA agreed with the IJ that Ogundipe had failed to demonstrate that the HCF Petition was approvable when filed based on the circumstances that existed at the time of its filing. Ogundipe then filed a motion for reconsideration, which the BIA denied. Ogundipe now petitions for review of both BIA orders.

## II

We review the decision of the IJ as supplemented by the BIA. *See Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1255 (4th Cir. 1995). We review de novo the legal determinations below, according appropriate deference to the BIA's interpretations of the INA and attendant regulations. *See Perez-Vargas v. Gonzales*, 478 F.3d 191, 194 (4th Cir. 2007). We will uphold the factual findings below if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481, (1992) (internal citation omitted).

A.

Because the parties agree that the HCF Petition was properly filed and non-frivolous, the only issue presented in this appeal is whether it was meritorious in fact.[3] Before analyzing this question, we first address the scope of the evidence the IJ may consider in making that determination. Ogundipe contends that the determination of whether a visa petition is meritorious in fact must be based on the "totality of the circumstances" that existed at the time of the initial filing and not merely on the evidence the petitioner actually possessed at the time or submitted with the petition. The government disagrees, arguing that only the evidence on record at the time of the initial filing may be considered, and thus the actual denial of the HCF petition by the INS forecloses any finding that it was meritorious in fact and therefore approvable when filed.

We agree with Ogundipe that the determination of whether a visa petition is approvable when filed is not limited to the question of whether the petition was actually approved. We find nothing in the applicable statutes or regulations that prevents an IJ in removal proceedings from considering other evidence that a petition was approvable when filed, even if that evidence was never submitted in conjunction with the original petition. This conclusion flows from the text of § 1245.10(a)(3). "Meritorious" means "meriting a legal victory" or "having legal worth," *Black's Law Dictionary* (8th

---

[3]At oral argument, Ogundipe's counsel suggested that the approvable when filed standard set forth in 8 C.F.R. § 1245.10(a)(3) is an impermissible interpretation of 8 U.S.C. § 1255(i). In his reply brief, Ogundipe makes the related contention that "the only requirement for an application to be 'approvable when filed' is for the application to be non-fraudulent." Reply Br. at 9. Because Ogundipe did not raise these arguments in his opening brief, we do not consider them. *See A Helping Hand, LLC v. Baltimore County, Md.*, 515 F.3d 365, 369 (4th Cir. 2008) ("It is a well settled rule that contentions not raised in the argument section of the *opening brief* are abandoned.") (quotation and citation omitted).

ed. 2004), but does not require actual legal success. More-over, § 1245.10(a)(3) requires that the determination of whether a petition is meritorious in fact "be made based on the circumstances that existed at the time the qualifying petition or application was filed." This provision contemplates that evidence other than that actually submitted in support of the petition might be considered for purposes of determining whether an alien is grandfathered.

The BIA's decisions support our conclusion. In this case, the BIA explained that the IJ properly based her decision on "the circumstances that existed at the time" the HCF Petition was filed, J.A. 24, and "did not rely on the ultimate denial" of the petition in concluding it was not approvable when filed, J.A. 2. The BIA's subsequent decision in *In re Jara Riero*, 24 I&N Dec. 267 (BIA 2007), discussed the issue more fully. When considering whether an alien was grandfathered on the basis of a visa petition filed by his U.S. citizen wife, the BIA noted that the denial of that petition was not itself dispositive of whether the petition was meritorious in fact. Rather, that determination was properly made by the IJ based both on the visa petition itself and on evidence offered in removal proceedings. *See also Lasprilla v. Ashcroft*, 365 F.3d 98, 101 (1st Cir. 2004) (indicating that alien could present evidence in removal proceedings that previously denied visa petition was meritorious in fact).

We therefore hold that a visa petition is meritorious in fact for purposes of grandfathering under 8 C.F.R. § 1245.10 if, based on the circumstances that existed at the time the petition was filed, the beneficiary of the petition qualified for the requested classification. An alien seeking to adjust his status may prove that a previously denied visa application was meritorious in fact by making an appropriate factual showing in removal proceedings, subject to any applicable evidentiary and procedural rules.

B.

Although we agree with Ogundipe that the denial of the HCF petition is not determinative of his petition to adjust status, we agree with the government that on the record here, Ogundipe has failed to demonstrate that the HCF Petition was meritorious in fact. In order for the HCF Petition to have been meritorious in fact, it was required to meet both the statutory and regulatory requirements for approval as of August 1997, when it was filed. The most basic such requirement was that Ogundipe meet the definition of "special immigrant," a predicate for qualification for a visa. *See* 8 U.S.C. § 1153(b)(4) (1997). The relevant definition of special immigrant here is an immigrant who:

> (i) for at least 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States;
>
> (ii) seeks to enter the United States–-
>
> > (I) solely for the purpose of carrying on the vocation of a minister of that religious denomination;
>
> . . .
>
> (iii) has been carrying on such vocation, professional work, or other work continuously for at least the 2-year period described in clause (i).

8 U.S.C. § 1101(a)(27)(C) (1997).

The evidence in the record fails to demonstrate that Ogundipe met this definition in 1997. Specifically, the record does not contain evidence establishing that Ogundipe had the

required two years' denominational membership or experience in full-time religious work prior to the filing of the HCF Petition. In addition, the fact that Ogundipe was admitted to the United States on a B2 nonimmigrant visitor visa suggests that he did not enter the United States "solely for the purpose of carrying on the vocation of a minister" as required.

Ogundipe also has not demonstrated that the HCF Petition met the regulatory requirements for approval. These requirements are set forth in 8 C.F.R. § 204.5 (1997), which provides that each visa petition for a religious worker must be accompanied by, *inter alia*:

> (g)(2) [E]vidence that the prospective United States employer has the ability to pay the proffered wage
> . . .
>
> . . .
>
> (m)(3)(i) Evidence that the organization qualifies as a nonprofit organization . . .
>
> . . .
>
> (ii) A letter from an authorized official of the religious organization in the United States which (as applicable to the particular alien) establishes:
>
> > (A) That, immediately prior to the filing of the petition, the alien has the required two years of membership in the denomination and the required two years of experience in the religious vocation, professional religious work, or other religious work; and
> >
> > . . .

(C) That, if the alien is a religious professional, he or she has at least a United States baccalaureate or its foreign equivalent required for entry into the religious profession. In all professional cases, an official academic record showing that the alien has the required degree must be submitted;

. . .

(4) Job offer. The letter from the authorized official of the religious organization in the United States must also state how the alien will be solely carrying on the vocation of a minister (including any terms of payment for services or other remuneration), or how the alien will be paid or remunerated if the alien will work in a professional religious capacity or in other religious work. The documentation should clearly indicate that the alien will not be solely dependent on supplemental employment or solicitation of funds for support. In doubtful cases, additional evidence such as bank letters, recent audits, church membership figures, and/or the number of individuals currently receiving compensation may be requested.

Here again, as detailed in the INS letter requesting additional information from HCF, much of the evidence required to establish that the HCF Petition was approvable when filed is absent. For example, the record does not establish that HCF qualified as a nonprofit organization in 1997. It also does not contain a copy of Ogundipe's academic record. Moreover, as we explained in our discussion of the statutory definition of "special immigrant," the evidence does not demonstrate that Ogundipe had the required two years' denominational membership or work experience. Nor does it demonstrate that Ogundipe would "be solely carrying on the vocation of a minister." 8 C.F.R. § 204.5(m)(4) (1997). Indeed, Ogundipe's 1996 and 1998 tax returns list his occupation as "sales" and

"asst. manager" respectively. J.A. 257, 248. Finally, the evidence does not establish that, in 1997, Ogundipe had been offered a qualifying job or that HCF was capable of providing for his support. On the contrary, HCF's letters to the INS stated that HCF "hope[d]" that Ogundipe would be able to receive compensation for his work and that all HCF staff were volunteers. J.A. 188, 193. The financial data HCF submitted to the INS indicated that it had no salary expenses in 1997. J.A. 201. Although HCF did report a $3200 "ministerial" expense, there is no indication that any of these funds went to Ogundipe.

We reject Ogundipe's argument that the later-filed AS Petition remedied any evidentiary deficiencies in the HCF Petition. Neither the evidence in the record supporting the AS Petition nor the fact of its approval in 2002 demonstrate that the HCF Petition was meritorious in fact when it was filed in 1997. Nor is there merit in Ogundipe's argument that the IJ erroneously failed to consider the totality of the circumstances in making her decision. The IJ recognized that this determination was to be made based on the circumstances that existed in August 1997 and that the ultimate denial of the HCF Petition was not dispositive. J.A. 64-66.[4]

---

[4]The IJ also stated that she "did not believe [she was] empowered to consider" the approval of the AS Petition in determining whether the HCF Petition was approvable when filed. We read this statement merely as a recognition that because the evidentiary support for the AS Petition related to Ogundipe's employment with AS in 2001, it was not relevant to the issue of whether the 1997 HCF Petition was meritorious in fact. To the extent that the IJ concluded that only the evidence actually submitted to the INS in support of the HCF Petition could be considered, this was error for the reasons explained in part II.A of this opinion.

Any such error, however, does not entitle Ogundipe to relief. Although Ogundipe's counsel contended at oral argument that the IJ erred by refusing to permit him to introduce evidence in the removal proceedings concerning the factual circumstances that existed at the time of the filing of the HCF Petition, this argument was not raised in Ogundipe's opening brief and we do not consider it. *See A Helping Hand*, 515 F.3d at 369. The

III

Finally, we address Ogundipe's argument that the BIA erred in denying his motion for reconsideration. We review the BIA's denial of reconsideration for abuse of discretion, *Jean v. Gonzales*, 435 F.3d 475, 481 (4th Cir. 2006), and find none here. Ogundipe's motion for reconsideration repeated his original appellate contention that the BIA and IJ failed to consider the totality of the circumstances that existed at the time the HCF Petition was filed. As the BIA explained in its first decision and in its order denying reconsideration, however, the IJ and the BIA did not treat the ultimate denial of the HCF Petition as dispositive. Rather, the IJ determined that "based on the circumstances that existed at the time the qualifying petition or application was filed, the respondent failed to demonstrate that the original petition was 'approvable when filed' within the meaning of 8 C.F.R. § 1245.10(a)(3)" (quotation omitted). J.A. 24; *see also* J.A. 2. Accordingly, Ogundipe did not demonstrate legal or factual error warrant-

---

only argument Ogundipe does raise in his briefs is that the AS Petition remedied the evidentiary deficiencies in the HCF Petition. As we have explained, though, the evidence supporting Ogundipe's eligibility for a special immigrant visa in 2001 does not demonstrate that he was eligible for one in 1997. Accordingly, even if the IJ had given the AS Petition greater consideration than she did, it would not have changed the result.

The dissent misreads this footnote. We do not concede that the IJ erred in refusing to accept testimony at the removal hearing. *See* Dissenting Opinion, p. 13. We simply do not address that issue because it was forfeited under longstanding Fourth Circuit precedent. *See A Helping Hand*, 515 F.3d at 369; *see also Yousefi v. INS*, 260 F.3d 318, 326 (4th Cir. 2001). To the extent that a "fundamental miscarriage of justice" provides an exception to this forfeiture rule, it is not present in this case. Ogundipe was given the opportunity to provide the necessary information in the HFC filing. Further, the INS subsequently asked him to provide additional needed information, but he failed to fully respond. Because Ogundipe failed to avail himself of these opportunities to supply relevant information, there is no miscarriage of justice in refusing him a third opportunity to supply it.

ing reconsideration. *See* 8 U.S.C. § 1229a(c)(6) (motions to reconsider "shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority").

IV

For the foregoing reasons, we deny Ogundipe's petitions for review.

*PETITIONS DENIED*

GREGORY, Circuit Judge, dissenting:

Albeit in a footnote, the majority concedes that the Immigration Judge ("IJ") in this case erred by not allowing Ogundipe and his witnesses to testify concerning the factual circumstances that existed at the time he filed his first petition for Amerasian, Widow, or Special Immigrant ("I-360 petition") status. My colleagues find no harm in this error. But, ironically, they hold that "nothing in the applicable statutes or regulations [ ] prevent[ ] an [Immigration Judge] in removal proceedings from considering other evidence that a petition was approvable when filed, even if that evidence was never submitted in conjunction with the original petition." (Majority Op. 6.) Because it is unreasonable to conclude that the IJ's decision to deny Ogundipe and his witnesses the opportunity to testify did not effect the IJ'S final determination, I must dissent.

At his removal proceedings, Ogundipe offered to present personal testimony and other witnesses from the He Cares Fellowship Church ("HCF") to support his claim that he worked at the church for at least two years as a full-time religious worker prior to filing his I-360 petition. The IJ, for reasons that are unclear from the record, chose not to hear from either Ogundipe or his witnesses.

Put simply, the issue in this case is whether Ogundipe's initial I-360 petition requesting "special immigrant status" was "meritorious in fact." The relevant statutes and regulations do not precisely define "meritorious." Religious workers, as defined by 8 U.S.C. § 1101(a)(27)(C), may be classified as "special immigrants."[1]

On August 18, 1997, HCF filed an I-360 petition on behalf of Ogundipe with the Vermont Service Center ("VSC") requesting that Ogundipe be classified as a religious worker. The VSC requested additional evidence supporting HCF's claim that Ogundipe had been "continuously performing the duties of a qualifying religious vocation or occupation during

---

[1] 8 U.S.C. 1101(a)(27)(C) defines special immigrant as: (C) an immigrant, and the immigrant's spouse and children if accompanying or following to join the immigrant, who—

(i) for at least 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States;

(ii) seeks to enter the United States—

(I) solely for the purpose of carrying on the vocation of a minister of that religious denomination,

(II) before October 1, 2008, in order to work for the organization at the request of the organization in a professional capacity in a religious vocation or occupation, or

(III) before October 1, 2008, in order to work for the organization (or for a bona fide organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in section 501(c)(3) of Title 26) at the request of the organization in a religious vocation or occupation; and

(iii) has been carrying on such vocation, professional work, or other work continuously for at least the 2-year period described in clause (i).

the two-year period preceding the filing of [Ogudipe's] petition." (J.A. 101.)**²**

Admittedly, Ogundipe did not provide all the requested documents.**³** As a result, VSC denied the petition stating that Ogundipe failed to establish that he was a "special immigrant" as defined by 8 U.S.C. § 1101(a)(27)(C). And, due to the ineffectiveness of his counsel – who was subsequently disbarred – Ogundipe's appeal was summarily denied.

In reviewing the VSC's decision, the IJ correctly stated that the success of Ogundipe's second I-360 petition, and the circumstances underlying that petition, had no bearing on whether Ogundipe qualified as a religious worker. Yet, Ogundipe's testimony regarding the factual circumstances at the time of HCF's initial filing was directly relevant to the sole issue at hand. Inexplicably, the IJ would not hear from Ogundipe and his witnesses. The majority holds that the IJ's error does not entitle Ogundipe to relief because he did not raise this argument in his opening brief. We, however, make exceptions to this general rule when, as here, the refusal to consider the newly-raised issue would result in plain error or

---

**²**More specifically, VSC requested HCF to supplement the application with the following information: (1) a letter indicating that it was willing and able to employ Ogundipe in full-time religious work; (2) evidence of HCF's ability to pay Ogundipe a liveable wage, including a copy of HCF's most recent financial statement reviewed or audited by a CPA; (3) evidence that Ogundipe had two years of continuous, full-time religious experience; and (4) proof that Ogundipe was qualified for the position.

**³**HCF's counsel did submit: (1) a list of the duties assigned to Ogundipe; (2) Ogundipe's Doctorate of Divinity from Joel International Ministerial and Theological Academy; (3) Ogundipe's Christian Merit Award Certificate from Prayer & Healing Bible College; (4) Ogundipe's Certificates of Ordination from the United Christian Church & Ministerial Association, dated 1997 and 1998; (5) HCF's Financial Data from 1997 & 1998; and 6) HCF's Monthly Financial Report. (J.A. 193-202.) HCF's counsel also stated that "according to [HCF], there is no full time employee for the church. No part time too. All staff are on voluntary basis." (J.A. 193.)

in a fundamental miscarriage of justice. *Muth v. U.S.*, 1 F.3d 246, 250 (4th Cir. 1993).

Errors raised for the first time on appeal are reviewed for plain error. *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *see also Celotex Corp. v. Rapid American Corp.*, 124 F.3d 619, 630-31 (4th Cir. 1997) (applying the plain error standard for criminal cases to civil litigants). Plain error review requires the defendant to establish that: (1) there was error; (2) the error was "plain;" and (3) the error affected the defendant's substantial rights. *Id.* If the three elements of the plain error standard are met, this Court may exercise its discretion to notice the error only "if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736. In my view, the IJ's error was plain and affected Ogundipe's substantial rights. Since the majority agrees there was error, I move directly to address whether the error was "plain."

Foremost, the error was "plain" because nothing precluded the IJ from hearing Ogundipe's witnesses at the removal proceeding. Indeed, in order to consider the "totality of the circumstances," the IJ had to hear from Ogundipe and his witnesses. Ogundipe or his witnesses could have provided sound reasons for why he had a second job during the two years preceding his application: perhaps he volunteered forty hours at the church and worked a second job to support himself. Such a scenario would not, on its face, nullify Ogundipe's claim that he entered the United States "solely for the purpose of carrying on the vocation of a minister of that religious denomination." 8 U.S.C. § 1101(a)(27)(C). To the contrary, it would have been powerful evidence of Ogundipe's commitment to his religious work. Second, Ogundipe's personal testimony could have shed light on his credibility and enabled him to address any concerns the IJ had regarding the authenticity of his ministerial calling and credentials.

Third, the witnesses could have discussed how HCF planned to provide Ogundipe with a livable wage. While true that prior to Ogundipe's initial I-360 petition HCF had no paid employees, Ogundipe could have been the first. Indeed, many "storefront" churches that started with a few parishioners and meager funds have blossomed into megachurches with bountiful resources to pay their religious leaders. Moreover, many churches manage to provide for their clerics in spite of what their balance sheets would indicate. Thus, even if HCF's cash assets were "insufficient" to support Ogundipe, the HCF community could have supported him by other means.

For example, HCF could have provided Ogundipe free room and board. Ogundipe, in fact, listed Arc of Salvation Church, HCF's sister church, as his place of residence on the first I-360 petition. Similarly, HCF may have sought increased donations from the congregation to provide a weekly stipend or even food and clothing. The IJ plainly erred, therefore, by not hearing the testimony of Ogundipe, at the very least, and his witnesses, all of whom could have provided evidence directly relevant to ascertaining the "totality of the circumstances" and determining whether his petition was "meritorious in fact."

Finally, without question, the IJ's error affected Ogundipe's substantial rights. In assessing this prong of the plain error test, we must consider "what effect the error had or reasonably may be taken to have had upon" the outcome of the proceedings. *United States v. Hughes*, 401 F.3d 540, 548 (4th Cir. 2005) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)). Again, here, the IJ's failure to hear testimony from Ogundipe and his witnesses affected her ability to assess the full circumstances surrounding the initial I-360 petition. Given that Ogundipe's subsequent petition was granted and denial of Ogundipe's I-360 petition renders him deportable, it is particularly egregious that the IJ would not hear the witnesses, including the possible deportee himself

with respect to the circumstances surrounding Ogundipe's Christian ministry in 1997. "[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Id.* (quoting *Kotteakos*, 328 U.S. at 765.) Since the IJ failed to consider readily available evidence that would have been crucial to her decision, I find that all three elements of the plain error standard are met.

I would, thus, recognize this error because it undermines the fairness of Ogundipe's removal proceedings and the public reputation of our immigration system. The IJ's refusal to hear testimony from Ogundipe and HCF denied Ogundipe his only opportunity to explain the ways in which his church community had and would continue to support him. Surely, the absence of this explanation played a role in the IJ's determination of whether Ogundipe would be deported or allowed to remain in this country. Yet, Ogundipe and his witnesses were readily available. Thus, the IJ's refusal to allow Ogundipe and his witnesses to testify not only denied Ogundipe a fair hearing but also left the removal proceedings bereft of integrity.

America's founding was due in no small measure to the many immigrants who dared to pursue the call of their religious beliefs and practices. In that pursuit they found freedom and in turn ordained and established a constitution to secure the "Blessings of Liberty" to all posterity. U.S. CONST. pmbl. To deny Ogundipe the opportunity to pursue his religious calling in America without allowing him and his witnesses even to speak is unconscionable. Accordingly, I dissent.