# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 8, 2013

No. 12-60164

Lyle W. Cayce
Clerk

ASHRAF HAKIMALI MANJEE; AMIR ALI MANJEE,

Petitioners,

v.

ERIC H. HOLDER, U.S. ATTORNEY GENERAL,

Respondent.

Petitions for Review of an Order of the
Board of Immigration Appeals
BIA No. A020 200 549

Before STEWART, Chief Judge, and KING and PRADO, Circuit Judges.

PER CURIAM:*

Petitioners Ashraf Hakimali Manjee ("Ashraf") and Amir Ali Manjee ("Amir") seek review of a ruling of the Board of Immigration Appeals ("BIA") with respect to their claims for asylum and withholding of removal. In addition, Amir specifically seeks review of the BIA's denial of his motion to remand and the denial of his motion for reconsideration of that motion to remand. Amir has also filed two additional motions to remand with this Court. For the reasons herein, we DENY the petition for review and all pending motions.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60164

**I.**

Ashraf and Amir, citizens of Pakistan, arrived in the United States on or about January 25, 1999 and August 1999, respectively. Ashraf arrived as a nonimmigrant visitor with authorization to remain in the United States for six months; Amir is present without being admitted or paroled. On July 30, 2007, the Department of Homeland Security ("DHS") initiated removal proceedings against Ashraf and Amir.

Both Ashraf and Amir applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Amir also moved for a continuance in the immigration court, based on an immigrant worker petition, or I-140 petition, that was filed by his employer on his behalf and subsequently approved, though his priority date had not yet become current. The Government opposed the request for a continuance, arguing that, because the priority date was not current, "the visa [wa]s not immediately available," and thus, he was not eligible for adjustment for status.

The immigration judge ("IJ") denied the motion for a continuance because good cause had not been shown. At the merits hearing on their asylum and withholding of removal claims, Ashraf and Amir claimed that as Shia Immai Ismaili Muslims they were seen "as second class citizens;" that members of the political party Mujahir Quali Movement ("MQM") harassed Ashraf for money;[1] that someone, perhaps MQM members, burglarized Ashraf's home; that MQM members intimidated Ashraf on the street; that shots were fired at the house;[2] and that Amir had been beaten by both the MQM group and the Jamaat Islami group because he refused to join either. After the conclusion of the hearing, the IJ pretermitted Ashraf and Amir's asylum applications. The IJ explained that

---

[1] Ashraf testified that the MQM solicited funds from "everybody who has money."

[2] When asked why the MQM might shoot at him, Ashraf said that "[t]hey did not want [him] to go to the police to do the investigation" of the burglary incident.

2

they were statutorily ineligible for asylum because they had not applied within one year of their last arrival in the United States, and they had failed to demonstrate either changed country conditions or extraordinary circumstances relating to the delay. The IJ further denied Ashraf and Amir's requests for withholding of removal and protection under CAT, finding that they had not shown any of the following: that they were targeted in Pakistan on account of any of the five protected grounds for asylum (race, religion, nationality, membership in a particular social group, or political opinion); that they had experienced past persecution; or that it was more likely than not that they would face persecution in the future. *See* 8 C.F.R. § 208.16; 8 U.S.C. § 1231(b)(3).

Ashraf and Amir appealed the IJ's decision to the BIA; however, before the BIA had issued a decision, Amir filed a motion with the BIA to remand his case to the IJ. Amir's motion to remand was based on his recent marriage to a legal permanent resident of the United States and an I-130 petition subsequently filed by his new wife. Amir contended that he qualified for adjustment of status through his new wife's I-130 petition even though he was not admitted or paroled because he was grandfathered in by an I-130 petition filed by his uncle on behalf of his mother on April 30, 2001, of which Amir and his siblings were derivative beneficiaries (hereinafter "April 30, 2001 I-130 petition"). *See* 8 U.S.C. § 1255(i); 8 C.F.R. § 245.10(a)(1)(i)(A). He attached as exhibits copies of his marriage license, the recent I-130 petition, and the April 20, 2001 I-130 petition.

The BIA dismissed the appeal, adopting the IJ's determinations on pretermission and lack of evidence of past or likely future persecution. The BIA also agreed with the IJ's determination that Amir had not shown good cause for a continuance, because he did not establish that a visa was immediately available to him or that he was ultimately eligible to adjust his status. The BIA further denied Amir's motion to remand, noting that he did not submit any

evidence that the April 30, 2001 I-130 petition had been granted. Thus, the BIA reasoned, Amir had not shown that the petition was "approvable when filed." Ashraf and Amir filed a timely petition for review of the BIA's order.

Amir then moved the BIA to reconsider its decision on his previous motion to remand. He argued that, in reaching its determination that the April 30, 2001 I-130 petition had not been approvable when filed, the BIA had not applied the appropriate legal standard.[3] He asserted that the petition had been properly filed, but had been denied only because supporting birth certificates establishing the familial relationship between his mother and uncle had not been submitted. He attached their birth certificates to the motion in an attempt to remedy the filing.

The BIA denied the motion to reconsider, determining that agency guidance and relevant regulations did not support Amir's position. Amir filed a timely petition for review of the BIA's decision on the motion to reconsider. He also filed two motions to remand with this Court.

## II.

### a. Motion to Continue

Amir argues that the BIA erred in affirming the IJ's denial of his motion for a continuance. This court's review of the denial of a motion for continuance is for abuse of discretion. *Witter v. INS*, 113 F.3d 549, 555 (5th Cir. 1997). There is no abuse of discretion where the decision to deny a continuance is "not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach." *Cabral v. Holder*, 632 F.3d 886, 890 (5th Cir. 2011) (citation omitted). "The BIA acts arbitrarily when it disregards its own

---

[3] In moving for reconsideration, Amir also argued another, independent basis for relief under 8 U.S.C. § 1255(i): his father's approved April 18, 2001 labor certification. We address this argument in Section II.d., below.

precedents and policies without giving a reasonable explanation for doing so." *Id.* The grant of a motion to continue is at the discretion of the IJ, who may grant the motion for good cause shown. *Witter*, 113 F.3d at 555; *see* 8 C.F.R. § 1003.29.

Amir based his motion to continue solely on his approved I-140 petition.[4] In considering a motion to continue based on pending employment-based visa petitions and employment certifications, the inquiry of whether good cause exists focuses on the likelihood of success of the adjustment of status application. *Rajah*, 25 I & N Dec. 127, 136 (B.I.A. 2009). Here, we conclude that the BIA did not abuse its discretion in concluding that Amir did not demonstrate good cause since he did not establish that a visa was immediately available to him[5] or that he would be ultimately eligible for adjustment.[6]

### b. Asylum and Withholding of Removal

Ashraf and Amir argue that the BIA erred by affirming the IJ's denial of their applications for withholding of removal and decision to pretermit their

---

[4] Amir also raises the I-130 filed by his wife in arguing that his motion to continue should have been granted. However, the I-130 petition filed by Amir's wife was not in evidence in the immigration court. The IJ denied the motion for a continuance on July 27, 2009, while the I-130 petition filed by Amir's wife is dated December 21, 2010.

[5] Amir conceded that a visa was not immediately available to him, making him ineligible for adjustment of status under 8 U.S.C. § 1255(i)(2) ("Upon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if . . . an immigrant visa is immediately available to the alien at the time the application is filed.").

[6] Because Amir was not admitted or paroled after inspection by an immigration officer, he is ineligible for adjustment of status under 8 U.S.C. § 1255(a) ("The status of an alien who was *inspected and admitted or paroled* into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe. . .") (emphasis added); *see also Matter of Quilantan*, 25 I. & N. Dec. 285, 287 (B.I.A. 2010). Nor did he offer any evidence with his motion to continue showing that he was eligible for a waiver of inadmissibility under § 1255(i).

requests for asylum. They also claim that the BIA erred by failing to provide a reasoned explanation for its denial of withholding of removal.[7]

Whether a petitioner has shown eligibility for withholding of removal is a factual determination. *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). We review the BIA's factual conclusions for substantial evidence. *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002). This Court may consider the rulings and findings of the IJ where they impact the BIA's decision, as they do here. *Id.* Under the substantial evidence standard, we will reverse if we decide "not only that the evidence supports a contrary conclusion, but [also] that the evidence *compels* it." *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005) (emphasis in original).

To be eligible for withholding of removal, an applicant must demonstrate that "it is more likely than not that the applicant's life or freedom would be threatened by persecution on account of either his race, religion, nationality, membership in a particular social group, or political opinion." *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004); *see* 8 C.F.R. § 241(b)(3). One of these five enumerated grounds must be "at least one central reason" the applicant has been or will be persecuted. *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) (internal quotation marks and citation omitted). The persecution in question must be suffered at the hands of the government "or forces that a government is unable or unwilling to control" and the petitioner must present specific facts demonstrating a reason to fear such persecution. *Tesfamichael v. Gonzales*, 469 F.3d 109, 113 (5th Cir. 2006). If past persecution is established, the applicant

---

[7] Petitioners have waived any challenges to denial of protection under CAT, because they did not meaningfully address this issue in their briefing before this Court. They summarily mentioned CAT only once, in the conclusion of their opening brief. *Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004) ("Failure to adequately brief an issue on appeal constitutes waiver of that argument.").

is entitled to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.16(b)(1)(i).

We conclude that the BIA's determination that Ashraf and Amir failed to demonstrate that their political belief or religion were a central reason for the negative treatment they experienced in Pakistan is supported by substantial evidence. For example, Ashraf said that the MQM intimidate anyone with money and that they probably fired shots at his house to keep him from pursuing a police investigation regarding the burglary incident. This evidence supports the conclusion that the conduct was "driven by criminal, non-political motives," which "does not constitute persecution." *See Thuri v. Ashcroft*, 380 F.3d 788, 792–93 (5th Cir. 2004); *see also Muhammad v. Holder*, 364 F. App'x 154, 157 (5th Cir. 2010) (per curiam) (unpublished) ("Private violence or other criminal activity unconnected to a protected ground—here, religion—does not suffice to show persecution on account of a protected ground."). It certainly does not "compel" a conclusion that political belief or religion were "at least one central reason" for the treatment Ashraf and Amir experienced in Pakistan. *See Zhang*, 432 F.3d at 344; *Shaikh*, 588 F.3d at 864. Thus, we hold that the BIA did not err by affirming the IJ's denial of petitioners' applications for withholding of removal.

We further disagree with petitioners' assertions that the BIA erred by failing to provide a reasoned explanation for its denial of withholding of removal. The BIA's explanation was sufficient. The BIA "consider[ed] the issues raised, and announce[ed] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Efe*, 293 F.3d at 907. Its decision referred to specific evidence supporting a conclusion that the treatment petitioners experienced was non-political and criminal in nature, including an observation that petitioners themselves "acknowledged the criminal aspect" of what they alleged to be the MQM's activities. Thus, we conclude that

the BIA provided a well-reasoned explanation for its decision to affirm the IJ's denial of withholding of removal.

Regarding Ashraf and Amir's argument with respect to pretermition, we note that this court has jurisdiction only over constitutional and other legal questions. *Nakimbugwe v. Gonzales*, 475 F.3d 281, 284 (5th Cir. 2007) (per curiam). Petitioners' asylum applications were pretermited because they had not been filed within one year of their last arrival in the United States, and they had failed to demonstrate either changed country conditions or extraordinary circumstances relating to their delay in filing their asylum applications—essentially, a question of timeliness. "Many determinations of timeliness are based on an IJ's assessment of facts and circumstances that affected the applicant's filing, and even after the passage of the Real ID Act, such rulings are clearly unreviewable by this Court." *Id.*; *see* 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D). Here, determinations as to the timeliness of petitioners' asylum applications are not reviewable because they are based on an evaluation of the effect of facts and circumstances on their filing. As such, we decline to consider whether the BIA erroneously adopted and affirmed the IJ's decision on pretermition.

### c. Motion to Remand

Amir next contends that the BIA erred by denying his motion to remand. In considering a petition for review of the BIA's denial of a motion to remand, we review for abuse of discretion. *See Ramchandani v. Gonzales*, 434 F.3d 337, 340 n.6 (5th Cir. 2005).

In moving to remand, Amir informed the BIA that he had gotten married to a legal permanent resident of the United States and that, subsequently, his wife had filed an I-130 petition on his behalf. He asserted that even though he was not inspected and admitted or paroled (which rendered him ineligible for adjustment of status under 8 U.S.C. § 1255(a)) he was eligible to adjust his

status through a waiver of inadmissability under § 1255(i) by virtue of the April 30, 2001 I-130 petition, of which he was a derivative beneficiary.  Section1255(i) provides that "[n]otwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States who entered the United States without inspection . . . who is the beneficiary . . . of a petition for classification under section 1154 of this title that was filed with the Attorney General on or before April 30, 2001" may apply for adjustment of status.  8 U.S.C. § 1255(i).  Thus, Amir argues, because of the April 30, 2001 I-130 petition, he was eligible to adjust his status based on the more recent I-130 petition filed by his wife.

In order to be eligible to adjust his status under § 1255(i), it was Amir's burden to demonstrate that the qualifying I-130 petition "was properly filed with the Attorney General on or before April 30, 2001," and that such petition was "approvable when filed."  8 C.F.R. § 1245.10(a)(1)(i)(A).  "Properly filed" means it was received or postmarked by April 30, 2001 and accepted for filing pursuant to applicable regulations.  *Id.* at § 1245.10(a)(2)(i).  To be "approvable when filed," a petition must be, *inter alia*, "meritorious in fact."  *Id.* at § 1245.10(a)(3).

Although "[t]here is little case law construing the terms 'approvable when filed' or 'meritorious in fact,'" see *Riero*, 24 I. & N. Dec. 267, 268 (B.I.A. 2007), the burden of establishing that the visa petition was meritorious in fact rests on the petitioner.  *See* 8 C.F.R. § 1240.8(d).  Here, Amir provided no evidence that the April 30, 2001 I-130 petition was meritorious in fact; indeed, the only exhibit he included concerning this petition was a copy of the petition itself.  Thus, because Amir failed to provide evidence that the qualifying petition was approvable when filed, we conclude that the BIA did not abuse its discretion in denying his motion to remand.

No. 12-60164

### d. Motion to Reconsider

Amir lastly contends that the BIA erred by denying his motion for reconsideration of his motion to remand. He asserts that the birth certificates attached to the motion for reconsideration establish that the April 30, 2001 I-130 petition was meritorious in fact and, thus, "approvable when filed."[8] This was the first time he alerted the IJ to any supporting birth certificates.

In considering a petition for review of the BIA's denial of a motion to reconsider, we apply the highly deferential abuse-of-discretion standard. *Lara v. Trominski*, 216 F.3d 487, 496–97 (5th Cir. 2000); *Osuchukwu v. INS*, 744 F.2d 1136, 1141 (5th Cir. 1984). This court must uphold the BIA's denial, even if we "deem [it] in error, so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach." *Osuchukwu*, 744 F.2d at 1142.

Amir argues that the BIA erred because it pointed to the ultimate denial of his uncle's I-130 petition as evidence that the petition was not "approvable when filed." He also contends that the BIA erroneously declined to consider the new evidence attached to his motion to reconsider. Amir cites some authority supporting his position. *E.g.*, *Ogundipe v. Mukasey*, 541 F.3d 257, 260 (4th Cir. 2008) (stating that "[there is] nothing in the applicable statutes or regulations that prevents an IJ in removal proceedings from considering other evidence that a petition was approvable when filed, even if that evidence was never submitted in conjunction with the original petition"); *Riero*, 24 I. & N. Dec. at 268

---

[8] Amir also contends that, in view of his father's approved labor certification, the BIA erroneously denied "grandfathered" status. The BIA pointed out that Amir had not raised this issue in his appeal or in his motion to remand. Because Amir did not previously raise his father's labor certification as a ground for grandfathering, it follows that his motion for reconsideration did not identify a legal or factual error in the BIA's prior decision. *See* 8 U.S.C. § 1003.2(b)(1). Thus, we hold that the BIA did not abuse its discretion to the extent it denied reconsideration of issues related to Amir's father's labor certification.

No. 12-60164

(determining that a denial of a qualifying I-130 petition, "although significant, [wa]s not determinative of whether the visa petition was meritorious in fact"). The totality of the evidence, however, does not support a finding that the BIA abused its discretion. The BIA rejected Amir's interpretation of the cited authorities and provided a thorough explanation of its reasoning. For example, it noted that it was not bound by *Ogundipe* because that case arose outside of this Circuit and pointed out that 8 C.F.R. § 245.10(a)(3) extends the definition of "approvable when filed" only to petitions denied "due to circumstances that ha[d] arisen after the time of filing." Here, Amir did not offer evidence the April 30, 2001 I-130 petition was denied because of circumstances that arose after it was filed. Thus, we conclude that the BIA did not abuse its discretion in denying the motion to reconsider.

## III.

After petitioning this Court for review of the BIA's decisions, Amir filed two motions for this Court to remand his matter to the BIA for a new determination on his application for adjustment of status.

In a motion filed December 17, 2012, Amir moved to remand based on an approved I-140 petition, through which he claimed eligibility for adjustment of status because of grandfathering through the April 30, 2001 I-130 petition. In light of our previous discussion in Section II.d. regarding the April 30, 2001 I-130 petition, the December 17, 2012 motion is denied.

In another motion to remand filed May 15, 2013, Amir argues that a new decision by the BIA supports his contentions that he should be grandfathered in by both his mother's April 30, 2001 I-130 petition and his father's April 18, 2001 labor certification. *See Butt*, 26 I & N Dec. 108 (B.I.A. 2013). In light of our discussion in Section II.d., Amir's arguments fail to the extent that they rely on the April 30, 2001 I-130 petition to grandfather him in. *Butt* has no bearing on our conclusion regarding the April 30, 2001 I-130 petition. Amir highlights

11

language in *Butt* that explains that whether a petition is "meritorious in fact" depends on whether it "would have been approved had it been adjudicated on the date it was filed." 26 I. & N. Dec. at 115. As we found in our consideration of his petition for review, Amir has not provided any evidence that the April 30, 2001 I-130 petition would have been approved had it been considered when it was filed.

Nor does *Butt* provide Amir with grounds to remand based on his father's April 18, 2001 labor certification, as Amir further argues in his May 15, 2013 motion. *Butt* elaborates on the term "meritorious in fact" in the context of a labor certification, 26 I & N Dec. at 116, but this elaboration is irrelevant here. The BIA declined to hear arguments based on the April 18, 2001 labor certification because Amir did not raise this certification on appeal before the BIA or in his previous motion to remand to the IJ, not because the BIA determined that it was not "meritorious in fact." Thus, we deny his May 15, 2013 motion to remand.

## IV.

For the foregoing reasons, the petition for review is DENIED.