MATTER OF ORTEGA

In Exclusion Proceedings

A-19173112

*Decided by Board August 19, 1970*

Notwithstanding presentation of a third preference immigrant visa supported by a labor certification based upon a B.S. degree in animal husbandry, an alien who upon arrival in the United States had no intention of working in the field of animal husbandry, or reasonable prospects of doing so, is excludable under section 212(a)(14) of the Immigration and Nationality Act, as amended, for lack of a valid labor certification.

EXCLUDABLE: Act of 1952—Section 212(a)(14) [8 U.S.C. 1182]—Immigrant, no valid labor certification.

ON BEHALF OF APPLICANT:
Gerald L. McVey, Esquire
30 Hotaling Place
San Francisco, California 94111
(Brief submitted)

ON BEHALF OF SERVICE:
Robert A. Vielhaber
Appellate Trial Attorney

Stephen M. Suffin
Trial Attorney
(Brief filed)

The record relates to a 30-year-old single male alien, a native nd national of the Republic of the Philippines, who applied for dmission into the United States for permanent residence on pril 5, 1969. He presented an immigrant visa supported by a rtification from the Secretary of Labor. The latter document 1owed that the applicant was destined to the United States for nployment as an animal scientist; that there were not sufficient ıch United States workers available; and that his employment in .id field would not adversely affect the wages and working contions of workers in the United States similarly employed.

The applicant told the examining immigration officer that he ıd no intention of working in the field of animal husbandry, but tended to work as a real estate salesman. Accordingly, his case ıs referred for an exclusion hearing before a special inquiry icer who, on April 16, 1969, ordered him excluded and deported ɔm the United States on the above-stated ground.

The appeal from the foregoing decision, which originally brought the case before this Board for consideration, was supported by documents indicating that, commencing on April 23, 1969, the applicant had been employed in this country in a field related to animal husbandry. On July 3, 1969, without indicating that the employment covered entitled the applicant to admission to the United States, we remanded the case to the special inquiry officer so that the documents submitted could be introduced in the record and thereafter the effect of the applicant's employment, if any, upon his admissibility considered by the special inquiry officer.

On September 23, 1969, the special inquiry officer again ordered that the applicant be excluded and deported from the United States. Said official then certified the case to us for review and final decision.

The applicant was graduated in 1964 from Araneta University in the Philippines, with a Bachelor of Science degree in Animal Husbandry. Following his graduation, he obtained employment in that field at the Canlubang Sugar Estates as an assistant manager. He left that position after about two months because the pay was too low. For the next year he was employed by the Mercury Drug Company in the Philippines, selling and promoting veterinary drugs. In 1966 he became employed by his mother as a real estate salesman, and he continued in that occupation until his departure for the United States.

It was developed at the reopened hearing that since April of 1969 the applicant has been working at the Stanford Research Institute in the Department of Laboratory Animal Medicine; that he works with common laboratory research animals feeding, cleaning, observing, and caring for them, and that various other animal husbandry techniques are practiced by him. It was also developed at the reopened hearing that no experience or skill was required to fulfill the position held by the applicant. Accordingly, it is established—and also conceded—that the applicant is not presently employed in the profession of an animal husbandman, who is defined as a scientist who:

Conducts research in the selection, breeding, feeding, management, and marketing of beef and dual purpose cattle, horses, mules, sheep, hogs, goats, and pet animals; Determines feed requirements of animals under varying conditions of work or production. Develops improved practices in housing, sanitation, and parasite and disease control. Controls breeding practices to improve strains of animals; May specialize in determining feed requirements

607

of animals and in developing required nutrients and be designated as *Animal Nutritionist.*[1]

The foregoing facts led the special inquiry officer to conclude that the applicant was coming to the United States to enter the labor market in competition with American workers in an occupation not covered by the labor certification he presented. However, the special inquiry officer raised the novel question of whether section 212(a) (14) of the Immigration and Nationality Act (8 U.S.C. 1182) renders excludable an alien who has been accorded a preference status under section 203(a) (3) of the Act (8 U.S.C. 1153), but who will not follow the occupation upon which the grant of his labor certification was predicated. The theory behind this proposition, apparently, is that the Congress did not intend the labor certification requirement of section 212(a) (14) to apply to aliens who qualify as members of the professions within the purview of section 203(a) (3) because, as professional persons, they will not perform "labor" (skilled or unskilled) within the generally accepted meaning of that term. We, like the special inquiry officer, cannot accept this proposition or the theory on which it is based.

Section 212(a) (14) of the Immigration and Nationality Act specifically provides that: "... the exclusion of aliens under this paragraph shall apply ... to preference immigrant aliens described in section 203(a) (3) ..." The section's clear and unambiguous language specifically includes within its ambit third preference immigrants such as this respondent. Also, to hold otherwise would be to add an additional exemption to the requirement of a labor certification not provided for in 8 CFR 212.8(a) which, in substance, provides that the certification requirement of section 212(a) (14) applies to aliens seeking admission who are preference immigrants as described in section 203(a) (3) of the Act. Obviously, the Congress did not envision that a person who obtained a certification as a "professional" person would be permitted to enter this country to compete in the labor market in a nonprofessional category for which no "clearance" had been granted. The regulations are geared accordingly.

Basically, therefore, the crux of this case is the same as in all others arising under section 212(a) (14), to wit: Does the applicant intend to take up the employment for which he was certified?[2] There are, however, considerations peculiar to this

[1] *Dictionary of Occupational Titles* (1965), U.S. Department of Labor, Manpower Administration, Bureau of Employment Security.

[2] *Matter of Poulin*, Interim Decision No. 1973 (BIA, 1969).

type of case which differentiate it from the others, to some extent at least.

Thus, the Immigration and Nationality Act, as amended, does not specify that a member of the professions must be coming to this country to engage immediately in the practice of his profession. No prospective employer is required, and no specific job offer is necessary. In many instances, and frequently because of factors over which the alien has no control, such as licensing and other local restrictions, he may be forced to accept any available employment for a period of time after arrival before entering into professional practice. And the legislative history of section 203(a)(3) shows that the addition of professional immigrants to this country was intended to be a boon to the American culture and work force, since they would be "free to climb."[3]

However, the phrase "for the purpose of performing," in section 212(a)(14), clearly indicates that an alien within its purview must establish a bona fide intent to engage in his profession, at least in the foreseeable future. The section's legislative history does not indicate it was the wish of the Congress to award a preference to an alien who, although fully qualified as a member of the professions, has no intention of engaging in his specialized field of endeavor, or reasonable prospects of doing so. In resolving the question of intent, consideration may properly be given to factors such as whether the alien is presently employed in his profession and, if not, the length of time he has not been so employed and the reasons therefor.[4]

We find that application of the foregoing rationale to the facts of this case calls for approval of the special inquiry officer's decision to exclude the applicant. He has only followed his profession for two months since graduating from college in 1964, and that immediately following his graduation. He has been in this country over a year and has not shown that he has reasonable prospects of engaging in his profession in the foreseeable future, or satisfactorily explained why he has not done so to date, as he must as an applicant for admission.[5] Under these circumstances, his actions both prior and subsequent to arrival, viewed in the light of his statement to the primary inspector that he did not intend to follow his profession, clearly outweigh his present self-serving and unsupported assertion to the contrary.

In the latter connection, the special inquiry officer, who was in

---

[3] *Matter of Stamatiades*, 11 I. & N. Dec. 643 (D.D., 1966).
[4] *Matter of Semerjian*, 11 I. & N. Dec. 751 (Reg. Com., 1966).
[5] Section 291, Immigration and Nationality Act (8 U.S.C. 1361).

he best position to judge the accuracy, reliability and truthfulness of the applicant's testimony, felt that the latter's present xplanation was an afterthought, made only after he learned of he possible consequences of his initial damaging statement. The pecial inquiry officer was convinced that the applicant would ngage in employment other than that for which he was certified, f he thought he could do so with impunity. We are entitled to give great weight to the special inquiry officer's evaluation of the estimony, and we do so here. The applicant's actions both before nd since arrival speak louder than his present protestations and, again, he has not met his burden of showing the factors required to authorize his admission despite the time he has had to do so.

ORDER It is ordered that the special inquiry officer's decision of September 23, 1969, be and the same is hereby affirmed.