# Matter of Jose MARCAL NETO, et al., Respondents

File A095 861 144 - Boston, Massachusetts
File A095 861 145
File A095 861 146

*Decided January 21, 2010*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Immigration Judges have authority to determine whether the validity of an alien's approved employment-based visa petition is preserved under section 204(j) of the Immigration and Nationality Act, 8 U.S.C. § 1154(j) (2006), after the alien's change in jobs or employers. *Matter of Perez Vargas*, 23 I&N Dec. 829 (BIA 2005), overruled.

FOR RESPONDENTS: Kevin R. Leeper, Esquire, Framingham, Massachusetts

AMICI CURIAE: Mary A. Kenney, Esquire, Washington, D.C.[1]

FOR THE DEPARTMENT OF HOMELAND SECURITY: Elena M. Albamonte, Appellate Counsel

BEFORE: Board Panel: FILPPU and PAULEY, Board Members. Concurring Opinion: GREER, Board Member, joined by PAULEY, Board Member.

FILPPU, Board Member:

In *Matter of Perez Vargas*, 23 I&N Dec. 829 (BIA 2005), we held that Immigration Judges lack jurisdiction to determine whether the validity of an alien's approved employment-based visa petition is preserved under section 204(j) of the Immigration and Nationality Act, 8 U.S.C. § 1154(j) (2006), after the alien's change in jobs or employers. Since our decision in *Matter of Perez Vargas*, three circuit courts, including the United States Court of Appeals for the Fourth Circuit, which has jurisdiction over *Matter of Perez Vargas*, have rejected that case. *Sung v. Keisler*, 505 F.3d 372 (5th Cir. 2007); *Matovski v. Gonzales*, 492 F.3d 722 (6th Cir. 2007); *Perez-Vargas v. Gonzales*, 478 F.3d 191 (4th Cir. 2007). The respondents argue on appeal

---

[1] We acknowledge and appreciate the very helpful briefs submitted by the parties and by amici curiae, the American Immigration Law Foundation and the American Immigration Lawyers Association.

that we should accept the reasoning of these cases and withdraw from *Matter of Perez Vargas*.

We asked for briefing on this issue, and the parties are in agreement that we should adopt the rationale set forth in the circuit court cases cited above. We will sustain the respondents' appeal and remand for further proceedings. As more fully explained below, we overrule *Matter of Perez Vargas*, and we now hold that Immigration Judges and the Board of Immigration Appeals have jurisdiction to render a decision on the portability of a job under section 204(j) of the Act.[2] In other words, Immigration Judges may determine whether an approved employment-related visa petition, a Form I-140 (Immigrant Petition for Alien Worker), remains valid when an alien changes his or her job but alleges that the new job is similar to the original position.

## I. FACTUAL AND PROCEDURAL HISTORY

The lead respondent, a native and citizen of Brazil, is the beneficiary of an approved I-140 employment-based visa petition.[3] He and his family filed applications for adjustment of status with the United States Citizenship and Immigration Services ("USCIS") in 2002. Their applications were denied in 2005 because, among other things, the USCIS determined that the lead respondent was inadmissible pursuant to section 212(a)(6)(C) of the Act, 8 U.S.C. § 1182(a)(6)(C) (2000), for engaging in fraud. The respondents were issued a Notice to Appear (Form I-862) by the Department of Homeland Security ("DHS") and renewed their applications for adjustment of status before the Immigration Judge.

In a decision dated March 23, 2007, the Immigration Judge found the respondents removable under section 237(a)(1)(B) of the Act, 8 U.S.C. § 1227(a)(1)(B) (2006), as aliens who remained in the United States longer than permitted. However, the Immigration Judge determined that the DHS had not sustained its burden of establishing the lead respondent's removability as an alien who was inadmissible under section 212(a)(6)(C)(i) of the Act for obtaining an immigration benefit by fraud or willful misrepresentation. Because the respondent no longer worked for the petitioning employer at the time of his hearing, the Immigration Judge also found that he lacked jurisdiction to determine the portability of the respondent's new employment

---

[2] Pursuant to 8 C.F.R. § 1003.1(g) (2010), this case has been designated as a precedent by the Board en banc.

[3] The respondents' claim is based on the lead respondent's application for relief, and we therefore refer to the lead respondent when we reference a single respondent. The other respondents are the lead respondent's wife and daughter.

and therefore denied his application for adjustment of status pursuant to *Matter of Perez Vargas*.

The respondents appealed the Immigration Judge's decision, alleging that he erred in determining that he lacked jurisdiction to decide the issue of portability under section 204(j) of the Act, and arguing that the adjustment of status application should have been adjudicated.[4] The Board scheduled oral argument and asked the parties to brief issues pertaining to the circuit court law that rejected *Matter of Perez Vargas*. We canceled oral argument, however, when it became apparent that both parties, supported by an amici curiae filing, advocated that we overrule *Matter of Perez Vargas*.

## II. ANALYSIS

In order to obtain lawful permanent resident status based on a visa petition filed by an employer, an alien must complete a three-step process. *Matovski v. Gonzales*, 492 F.3d at 726-27. The alien's employer completes the first two stages by filing an application for employment certification with the Department of Labor and, upon gaining labor certification, filing an I-140 with the DHS. *Id.* at 727. If the visa petition is approved and visa numbers are immediately available, the alien's adjustment application can be granted. The alien may renew an adjustment of status application before an Immigration Judge if it is denied by the USCIS.[5] *Id.*; *see also* 8 C.F.R. § 245.2(a)(5)(ii) (2010).

This entire process can take a significant amount of time. The Department of Labor must determine that there are not sufficient workers available and that the alien's employment will not adversely affect the wages and working

---

[4] The respondents also raise the issue whether the Immigration Judge erred in denying their request for a continuance. Specifically, they assert that the Immigration Judge's denial of a continuance prevented them from adequately preparing for the evidentiary hearing. As we have stated before, a motion for a continuance is within the sound discretion of the Immigration Judge, and his decision denying such a motion will not be reversed on appeal unless the alien establishes, by a full and specific articulation of the particular facts involved or evidence that he would have presented, that the denial caused him actual prejudice and harm and materially affected the outcome of his case. *See Matter of Sibrun*, 18 I&N Dec. 354 (BIA 1983); 8 C.F.R. § 1003.29 (2010). In light of our decision sustaining the respondents' appeal and remanding for further proceedings, we decline to address this issue.
[5] We note, however, that an Immigration Judge has no jurisdiction over the adjustment application of an "arriving alien" unless the alien previously filed an adjustment application, departed from and returned to the United States under advance parole, had the adjustment application subsequently denied by the USCIS, and was placed in removal proceedings either at the time he or she was paroled into the United States or after the application was denied. 8 C.F.R. §§ 1245.2(a)(1)(ii)(A)–(D) (2010).

conditions of United States workers. *Matovski v. Gonzales*, 492 F.3d at 733; *see also* section 212(a)(5) of the Act. In addition, the adjudication by the DHS of an I-140 or an application for adjustment, or both, can result in further delay. As a result, Congress enacted section 204(j) of the Act as part of the American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251, 1254, "to provide '[j]ob flexibility for long delayed applicants for adjustment of status to permanent residence.'" *Matovski v. Gonzales*, 492 F.3d at 733 (quoting the heading of section 204(j) of the Act). Section 204(j) provides:

> A petition under subsection (a)(1)(D) for an individual whose application for adjustment of status pursuant to section 245 has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed.[6]

However, as the Sixth Circuit pointed out, no regulations have yet been promulgated to provide guidance on how to determine the portability of a job change underlying an employment-based visa petition. *Matovski v. Gonzales*, 492 F.3d at 733.

To some extent, this lack of guidance persuaded us in *Matter of Perez Vargas*, 23 I&N Dec. 829, to decide that Immigration Judges lack jurisdiction to render portability determinations under section 204(j) of the Act. We relied on the fact that a determination under section 204(j) requires some expertise in assessing the similarity in certain types of employment. *Id.* at 831. "[E]ven assuming the techniques used in the different jobs involved similar principles and methods, it would be difficult for the Immigration Judge to assess whether the new job description included the same level of responsibility and skill, and whether the job would have an adverse impact on the United States labor market," which is a factor taken into consideration by the Department of Labor when assessing whether to grant labor certification for the employment-based visa petition. *Id.* at 831-32; *see also id.* at 833-34.

In addition, our rationale for previously finding that Immigration Judges lack jurisdiction to decide whether a visa petition remains valid when an alien changes jobs or employers rested on the fact that the DHS has jurisdiction to decide the validity of visa petitions in the first place. *Id.* at 831. In sum, we reasoned that since "[o]riginal jurisdiction over employment-based

---

[6] As the Fourth Circuit noted, "The cross-reference to subsection (a)(1)(D) appears to be in error. Subsection (a)(1)(F) seems to be the intended subsection, given Congress' redesignation of subsection (a)(1)(D) as subsection [(a)(1)(F)] by Section 1503(d)(1) of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464, 1521." *Perez-Vargas v. Gonzales*, 478 F.3d at 192 n.2.

visa petitions lies with the DHS following issuance of a labor certification by the Department of Labor . . . [i]t therefore follows that any redetermination of the visa petition's validity would also lie with these government entities, and not with the Immigration Judge." *Id.* at 832 (citation omitted).

On direct appeal, the Fourth Circuit disagreed with our decision that section 204(j) of the Act is a separate jurisdictional provision. Rather, the court found that section 204(j) applies to aliens whose applications for adjustment of status remain pending for more than 180 days and, therefore, that the relevant adjudication involves adjustment of status. *Perez-Vargas v. Gonzales*, 478 F.3d at 194. Since the Attorney General has, aside from a few exceptions, vested Immigration Judges with the exclusive jurisdiction to decide applications for adjustment of status by aliens in removal proceedings, the court concluded that jurisdiction to make a section 204(j) determination also rests with Immigration Judges. *Id.* This determination is "simply an act of factfinding incidental to the adjustment of status process." *Id.*; *see also Sung v. Keisler*, 505 F.3d at 376 (adopting the Fourth Circuit's reasoning in *Perez-Vargas*).

The amici brief argues that these circuit court cases found that the plain language of the statute makes clear that Congress intended Immigration Judges to have jurisdiction over section 204(j) determinations. Therefore, according to amici, under step one of the Supreme Court's two-step analysis for interpreting statutes in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we are required to find that Immigration Judges have exclusive jurisdiction over portability issues. *See also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005). We do not agree that section 204(j) is so plainly written. There is no direct reference to Immigration Judges in section 204(j), and they are certainly not given exclusive jurisdiction over such determinations merely because they have jurisdiction over applications for adjustment of status in removal proceedings.

Nevertheless, we do not find it unreasonable, particularly with the way these cases have developed, to now find that Immigration Judges *do* have jurisdiction over section 204(j) determinations. One of our assumptions in *Matter of Perez Vargas* was that the DHS would give an Immigration Judge an indication as to whether an alien's job was portable under section 204(j) of the Act. However, the DHS has now informed us in its brief that this is not the case. The agency does not see itself as having jurisdiction over section 204(j) determinations once an alien is in removal proceedings. We lack authority to force the agency to make such a determination. That leaves only the Immigration Judge to make this decision. We certainly agree with the parties that the respondent should be able to obtain a decision on the portability of the new employment under section 204(j). That was Congress's intent in enacting section 204(j), and not making such a determination

frustrates the adjustment process for these aliens. Since the DHS is not going to make the section 204(j) determination when it lacks jurisdiction over the adjustment application, we agree that the Immigration Judge must do it. Any other conclusion would result in unfairness.

The difficulties in procedurally navigating the transfer of the case between an Immigration Judge and the DHS for portability determinations created unfairness for aliens seeking resolution of their adjustment applications. As noted by the Fourth Circuit, the result of our decision in *Matter of Perez Vargas* placed aliens who are in removal proceedings at a disadvantage compared to those whose adjustment applications were pending before the DHS. *Perez-Vargas v. Gonzales*, 478 F.3d at 195. While the latter would be permitted to request a section 204(j) determination directly from the DHS, aliens whose applications were pending in removal proceedings could not request a section 204(j) determination from the Immigration Judge to determine the continuing validity of their visa petitions. This apparent inability to obtain a portability determination frustrated congressional intent. Likewise, the Sixth Circuit found that our decision in *Matter of Perez Vargas* contradicted "the expressed intent of Congress to protect the job flexibility of long-delayed applicants." *Matovski v. Gonzales*, 492 F.3d at 737.

Upon reconsidering our prior decision, and particularly in light of the DHS's interpretation of its role in the section 204(j) process, we are persuaded to agree with these recent circuit court decisions that *Matter of Perez Vargas* is contrary to Congress's intent to allow an alien to obtain a portability determination and that there is no express jurisdictional bar to an Immigration Judge's authority to determine the portability of a job under section 204(j). The purpose of the statute is to allow an alien to obtain a determination about the continued viability of his or her visa petition after a change in employment when the adjustment application has been pending for more than 180 days.

It is clear that Immigration Judges do not have authority to decide whether a visa petition should be granted or revoked. *See* 8 C.F.R. § 204.1(e) (2010); *see also Matter of H-A-*, 22 I&N Dec. 728, 736 (BIA 1999) (noting the Board's lack of jurisdiction to assess the evidence submitted in support of a visa petition). However, despite these limitations, Immigration Judges do have jurisdiction over related issues. For example, Immigration Judges may examine the underlying basis for a visa petition when such a determination bears on the alien's admissibility. *See, e.g.*, *Matter of Iesce*, 12 I&N Dec. 156 (BIA 1967) (rejecting the respondent's argument that the fact that she was issued an immigrant visa while abroad meant she was entitled to be admitted, and finding her deportable because, as a married woman, she was not entitled to the fifth-preference visa issued to her as an unmarried daughter); *see also Matter of Mozeb*, 15 I&N Dec. 430 (BIA 1975) (finding that although aliens from Yemen were granted visa petitions based on adoptions abroad by the American consular officer, they were not entitled to such status based

on Islamic law and were therefore not entitled to be admitted); *Matter of R-D-*, 6 I&N Dec. 581 (BIA 1955) (finding that a Western Hemisphere visa issued under prior law remained valid where, absent evidence of fraud or misrepresentation, an employment offer was no longer available, but the alien had other job opportunities). In fact, section 204(e) of the Act makes clear that even when a visa petition is approved, the alien is not immunized from having the basis for the visa petition examined by an Immigration Judge, if warranted, once the alien is placed in removal proceedings, as part of the Immigration Judge's determination whether the alien is entitled to be admitted to the United States. *See Matter of Bark*, 14 I&N Dec. 237, 240 (BIA 1972) (noting that the "statute specifically provides that the visa petition procedure shall not be construed as entitling an immigrant to enter the United States if at the time of arrival he is found not to be entitled to the classification accorded him by the visa petition, section 204(e)"), *rev'd on other grounds*, *Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975).

In the labor certification context, Immigration Judges may assess whether the representations forming the basis for a labor certification approval were accurate, despite not being allowed to actually approve labor certifications, even as to jobs listed under a precertified list of occupations. *Compare Matter of Belmares-Carrillo*, 13 I&N Dec. 195 (BIA 1969) (holding that an Immigration Judge had authority to determine whether an alien was properly qualified for labor certification necessary for an employment-related visa), *with Matter of Grove*, 13 I&N Dec. 572 (BIA 1970) (finding that an Immigration Judge had no authority to consider whether a nonpreference applicant for adjustment of status was qualified for precertification under Schedule C of 29 C.F.R. § 60.3, which authorized only the District Director to make such a determination). *See generally Matter of Ortega*, 13 I&N Dec. 606 (BIA 1970) (affirming the Immigration Judge's determination that the alien's actual job responsibilities were not the same as those for the profession identified in the labor certification); *Matter of Welcome*, 13 I&N Dec. 352 (BIA 1969) (finding that the Board had authority to determine the validity of a labor certification when the alien knew the certified job was no longer available prior to departure from abroad); *Matter of Stevens*, 12 I&N Dec. 694 (BIA 1968) (finding, under prior law, that where an alien was no longer employed by the employer who obtained the labor certification submitted in conjunction with her application, the certification was no longer valid for adjustment of status purposes and she was statutorily ineligible for adjustment of status in the absence of a new certification).

We recognize that a section 204(j) determination might be difficult for Immigration Judges. Our prior decision in *Matter of Perez Vargas* discussed the fact that judges may lack expertise in making such determinations. Nevertheless, we anticipate that there will be cases where the new job is very

similar to the original job, which will result in a relatively easy determination for the Immigration Judge, and, barring any other eligibility issues, the alien will be granted adjustment of status. Likewise, where the new job is very different from the original one, a decision to find the job not portable may well be fairly easy.

In cases where portability is not readily apparent, the Immigration Judge may need to grant continuances for the parties to obtain and submit evidence in support of, or in opposition to, a finding of portability. *See Matter of Rajah*, 25 I&N Dec. 127 (BIA 2009) (stating that an alien's unopposed motion to continue ongoing removal proceedings to await the adjudication of a pending employment-based visa petition should generally be granted if approval of the visa petition would render him prima facie eligible for adjustment of status); *see also Matter of Hashmi*, 24 I&N Dec. 785 (BIA 2009) (identifying factors to be considered in determining whether to grant a continuance in similar cases involving pending family-based visa petitions).

While we recognize that our decision may result in Immigration Judges often rendering decisions of first impression, we are confident that section 204(j) determinations are not outside the scope of their duties in immigration matters. Immigration Judges, like other trial judges generally, are often required to determine factual disputes regarding matters on which they possess little or no knowledge or substantive expertise, and, in making such determinations, they typically rely on evidence, including expert testimony, presented by the parties.

As a final matter, we believe that allowing Immigration Judges to make section 204(j) determinations is more in line with the legislative purpose of the American Competitiveness in the Twenty-First Century Act, which appears to be intended to free aliens from the need to file new employment visa petitions, or to obtain formal reapproval of prior petitions, when they change jobs after a significant delay in the adjudication process. Our decision in *Matter of Perez Vargas* effectively required an alien to obtain reapproval from the DHS before an Immigration Judge could adjudicate the adjustment of status application. As such, it went against congressional intent to allow for job flexibility in long-delayed applications for adjustment of status. *See Perez-Vargas v. Gonzales*, 478 F.3d at 195; *see also Matovski v. Gonzales*, 492 F.3d at 737. Accordingly, we overrule our decision in *Matter of Perez Vargas*.

**ORDER:** The respondents' appeal is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further adjudication of the respondents' request for adjustment of status.

*CONCURRING OPINION:* Board Member Anne J. Greer, in which Roger A. Pauley, Board Member, joined

Both the respondent and the Department of Homeland Security ("DHS") now request that we vacate *Matter of Perez Vargas*, 23 I&N Dec. 829 (BIA 2005). The Government's change of position in this regard, combined with the decisions in three circuit courts of appeal to overrule *Perez Vargas*, provides a meaningful impetus for us to do so. I therefore reluctantly join with the majority in concluding that the time has come for Immigration Judges and the Board to take jurisdiction in all circuits over portability determinations under section 204(j) of the Immigration and Nationality Act, 8 U.S.C. § 1154(j) (2006). I recognize that nothing explicitly prohibits our jurisdiction and that Immigration Judges, as finders of fact, can make these determinations. Yet I write separately to explain why I believe this to be an undesirable shift in the law.

Section 204(j) was enacted in response to delays by the United States Citizenship and Immigration Services ("USCIS") in adjudicating adjustment of status applications, which impeded aliens from changing employment. Section 204(j) was designed to give job flexibility to these adjustment applicants. Without this provision, an alien's change in job or employer while his adjustment application was pending would invalidate the employment-based visa petition and labor certification, thereby rending him ineligible to adjust status. During the years the adjustment application was pending, aliens were bound to the certified job and employer. Section 204(j) frees aliens to make such changes without invalidating the underlying Form I-140 (Immigrant Petition for Alien Worker) and labor certification when the initial adjustment application is not adjudicated by the USCIS in a timely manner. *Matter of Perez Vargas*, 23 I&N Dec. at 832.

While section 204(j) is temporally linked to the adjustment application, the evaluation of the new position's characteristics approximates the labor certification and visa petition examination process.[1] Section 204(j) is not implicated unless the USCIS does not complete the adjustment of status adjudication within 180 days of filing. If the alien changes jobs after that point, he may request a portability determination from the USCIS to ascertain whether the new position is in the same or similar occupational classification as the job for which the certification was issued.

---

[1] The section 204(i) portability provision for professional athletes is similar to the section 204(j) provision, but it is not linked to the adjustment application. Similarly, for purposes of section 204(i), the question is whether the I-140 remains valid despite a change in employment.

Since 2001, the DHS (formerly the Immigration and Naturalization Service) has represented that regulations were being formulated to address section 204(j) determinations. *See, e.g.*, *Matter of Perez Vargas*, 23 I&N Dec. at 833 n.5. In the absence of regulations, the DHS has developed procedures and issued extensive guidance for handling section 204(j) determinations. When making a portability determination, USCIS adjudicators are directed to use the Department of Labor's published occupational classification system to compare the occupational code assigned to the certified job with the code that is appropriate to the new job. They also compare the jobs in terms of the listed job duties and the wage offered. This sort of analysis can be likened to successor-in-interest determinations in adjudicating I-140s. *See id.* at 832. Further, the Administrative Appeals Office ("AAO") issues administrative decisions to provide national interpretation for recurring 204(j) issues of significance. *See, e.g.*, *Matter of Al Wazzan*, A95 253 422 (AAO Jan. 12, 2005), *available at* 2005 WL 1950775 (holding that the I-140 must be approved for an alien to port).[2]

I find support in the administrative appellate AAO decisions and the reviewing Federal courts for my position that portability is more rationally related to the underlying visa petition than to the adjustment application. Recently, in *Herrera v. U.S. Citizenship and Immigration Services*, 571 F.3d 881 (9th Cir. 2009), the United States Court of Appeals for the Ninth Circuit found that nothing in section 204(j) of the Act precluded the USCIS from revoking Herrera's approved I-140 *after* she had used it to port to a new employer. The court agreed with the AAO's analysis of section 204(j) that for an I-140 to remain "valid" with respect to the new job, it "'must have been filed for an alien that is "entitled" to the requested classification.'" *Id.* at 887 (quoting the AAO). Consequently, Herrera's adjustment application was properly denied because an alien cannot port on the basis of a revoked I-140.

Breaking the link between section 204(j) determinations and the I-140 adjudication will only complicate the adjudication of an adjustment application in removal proceedings. For example, if a respondent in removal proceedings seeks to port before the USCIS adjudicates his I-140, an Immigration Judge is faced with the prospect of continuing the case to allow the USCIS to adjudicate the I-140. Presumably, the case would then need to be returned for the Immigration Judge to make a portability determination under section 204(j) and adjudicate the adjustment application. It would be far more efficient for the employment criteria to be evaluated as a whole within a structure designed for that purpose at the USCIS.

---

[2] The potential for divergent sources of precedential authority emerging from the AAO and the Board raises the prospect of additional confusion, although Board authority will be binding. 8 C.F.R. § 1003.1(g) (2010).

Significantly, section 204(j) was not incorporated into section 245 of the Act, 8 U.S.C. § 1255 (2006), which governs the adjustment of status process. It is undisputed that the DHS's USCIS has exclusive jurisdiction to adjudicate visa petitions. After an investigation, the USCIS is authorized to approve a visa petition if the facts stated in the petition are true and the alien is eligible for the classification sought. *See* section 204(b) of the Act. Section 204 of the Act specifies persons who may file visa petitions, describes circumstances that preclude petition approval, and authorizes certain petitions to remain valid despite a change in employment. Because only the USCIS acts on visa petitions, only it can make section 204 determinations—except now for section 204(j), and then only if removal proceedings have begun.

Immigration Judges do not validate or invalidate visa petitions and labor certifications. Rather, they may examine the intent of the respondent and the employer to consummate the employment relationship. The issue presented in such cases is whether the alien possessed the requisite intent to accept employment in the certified job. *See, e.g.*, *Matter of Ortega*, 13 I&N Dec. 606 (BIA 1970) (finding that the applicant was excludable at entry because he had no intention of accepting the job covered by the labor certification); *Matter of Welcome*, 13 I&N Dec. 352 (BIA 1969) (finding that the respondent was inadmissible at entry because she knew at the time of her admission that the job covered by the labor certification was no longer available to her); *Matter of Stevens*, 12 I&N Dec. 694 (BIA 1968) (denying the respondent's adjustment application because she was no longer working at the job covered by the labor certification).

If the DHS would undertake the portability determination, there are several procedural mechanisms available to an alien in removal proceedings whose eligibility to adjust status depends upon a favorable portability determination. Proceedings could be administratively closed, terminated without prejudice, or continued while the USCIS determines the continuing validity of the respondent's I-140. If the parties agree, the Immigration Judge may grant administrative closure. *See generally Matter of Gutierrez*, 21 I&N Dec. 479 (BIA 1996) (stating that administrative closure is used to temporarily remove the case from the court's docket and that a case may not be administratively closed if opposed by either party). Administrative closure avoids the repeated rescheduling of a case that is clearly not ready to be concluded. Either party can move to have the case recalendered once the portability determination is made. Alternatively, the parties could agree that the case be terminated, thereby allowing the DHS to make the portability determination, as well as the decision on adjustment of status.

The Immigration Judge could also continue the case to await the outcome of the portability determination. Immigration Judges routinely

exercise their discretion over continuance motions for pending visa petitions in both the family and employment contexts. *See Matter of Hashmi*, 24 I&N Dec. 785 (BIA 2009) (discussing the factors to be used when considering a motion to continue proceedings to await the adjudication of a pending family-based visa petition); *see also Matter of Rajah*, 25 I&N Dec. 127 (BIA 2009) (discussing factors to be used when considering a motion to continue proceedings to await the adjudication of a labor certification or employment-based immigrant visa petition).

I would prefer to establish a standard to allow the Immigration Judge to continue the case when a successful portability determination would result in a prima facie approvable adjustment of status application. The statutory and regulatory landscape in this area is confusing and complex, which creates uncertainty in its application. Aliens in removal proceedings have not been successful in obtaining portability determinations from the DHS, which now leads to the result we reach here. In *Matter of Yauri*, 25 I&N Dec. 103 (BIA 2009), we explained how similar confusion led to DHS inaction over a specific category of adjustment applicants, even in the presence of clearly assigned jurisdiction.

In my view, USCIS adjudication of portability determinations under section 204(j) would be far more efficient than bifurcating jurisdiction depending on whether removal proceedings are underway. Nonetheless, this is the result we are compelled to adopt.