# Matter of M-A-M-Z-, Respondent

*Decided December 17, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Expert testimony is evidence, but only an Immigration Judge makes factual findings.

(2) When the Immigration Judge makes a factual finding that is not consistent with an expert's opinion, it is important, as the Immigration Judge did here, to explain the reasons behind the factual findings.

FOR RESPONDENT: Hillary Gaston Walsh, Esquire, Phoenix, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY: Joey L. Caccarozzo, Assistant Chief Counsel; Lois B. Agronick, Associate Legal Advisor

BEFORE: Board Panel: MULLANE, CREPPY, and LIEBOWITZ, Appellate Immigration Judges

MULLANE, Appellate Immigration Judge:

In a decision dated November 22, 2017, an Immigration Judge denied the respondent's applications for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), and ordered him removed from the United States. The respondent has appealed from that decision. The appeal will be dismissed.[1]

## I. BACKGROUND AND IMMIGRATION JUDGE'S DECISION

The respondent is a native and citizen of Mexico. He is married to a United States citizen, and they resided together in his late mother-in-law's house in Mexico. He has United States citizen stepchildren who live in the United States.

---

[1] A three-member panel of the Board heard oral argument in this case on December 5, 2019.

In February 2016, the respondent's car was set on fire outside the mother-in-law's home in Mexico.  It was the middle of the night and a neighbor alerted them to the fire.  The respondent went outside but no one saw who started the fire.

A second incident took place on May 2, 2016, when he drove to the veterinarian's office with his wife's granddaughter in the backseat of the car. Two men parked next to the respondent and one of them asked whether the respondent knew him.  The respondent said no, and the man pointed a gun at the respondent and said, "You know who I am.  You stole from me." According to the respondent, the man hit him two or three times with the gun and also punched him.  He threatened to kill the respondent but noticed the granddaughter and said he would kill him the next time.  The respondent testified that he did not know the man or what he was talking about and did not owe him any money.  The respondent filed a police report about the incident.

When asked whom he feared in Mexico, the respondent said he was "afraid of the mafia.  I mistrust anything."  He admitted that he did not know the identities or group affiliations of the individuals who attacked him.

A private investigator also testified as a witness for the respondent.  The private investigator previously worked as a law enforcement officer for the United States Government.  The Immigration Judge accepted the witness as an expert on general country conditions and cartel activity in Mexico.  In the course of an investigation, the witness learned that the respondent's step-daughter was arrested in January 2015 for attempting to smuggle methamphetamine and heroin across the border.  He concluded that the same man who provided the drugs for her to smuggle into the country also attacked the respondent, because their physical description of the man matched.  He also testified that the respondent's step-daughter told him that she was working for the Drug Enforcement Administration ("DEA"), but he did not verify her claim with the DEA.  His theory was that the assault against the respondent was related to the drugs confiscated from his step-daughter, because the assailant wanted to recover his lost money.  The witness testified that drug smugglers will threaten the family members of a person who has lost drugs.

The Immigration Judge issued a written decision wherein he summarized the evidence presented, including a detailed description of the testimony given by the respondent and the witness.  He then set forth the applicable legal standards for asylum, withholding of removal, and protection under the Convention Against Torture.  The Immigration Judge found that the "respondent is a member of the cognizable particular social group composed of 'family,' with a particular subgroup of 'immediate family members of [the respondent's step-daughter].'"  He concluded that the mistreatment the

respondent suffered in the arson incident and the assault outside the veterinarian's office was not severe enough to constitute past persecution.

The Immigration Judge made an alternative conclusion, stating that "[e]ven if the two events mentioned by the respondent had constituted persecution, the respondent would not have met his burden to establish a nexus to his social group of family." The Immigration Judge focused on the timeline and said that "[t]he car burning and assault against the respondent did not occur until over a year after [his step-daughter's] loss of the drugs." He found that the evidence presented did not show that the arson and assault were even related. He focused on the fact that the respondent did not know the identity of the arsonist or the assailant. With respect to the assailant, the Immigration Judge pointed out that he "made no mention to the respondent of [his step-daughter] or the lost load of drugs." Furthermore, the respondent did not have a close relationship with his step-daughter as she had never visited him at the home in Mexico, and he could not recall the last time he spoke with her. All of these factors led the Immigration Judge to find "the timeline of events and the two events themselves to be too speculative to establish any sort of nexus."

The Immigration Judge next turned to the witness's testimony and found his "testimony and affidavit to be unhelpful and full of speculation." The Immigration Judge explained that the witness's testimony regarding the "match" between the respondent's assailant and his step-daughter's drug provider was speculative and based on "general descriptions," and gave it little weight. The Immigration Judge was also not persuaded by the witness's claim that the respondent's step-daughter worked for the DEA because the witness admitted that he did not confirm the information with the DEA, and that the reasons the witness provided could be explained other ways. The Immigration Judge also pointed out that the witness "did not address the typical timeline of retaliation by cartels" and that he "did not address the significance of strength of relationship between a smuggler and a particular family member." The Immigration Judge concluded that the witness's testimony did not establish a nexus between the harm the respondent suffered and a protected ground, so the respondent had not established past persecution.

Turning to the respondent's claim of a well-founded fear of future persecution, the Immigration Judge reasoned that the respondent had not met his burden of proof. He concluded that the respondent had not shown that there was a pattern or practice because "no one in the respondents' family has suffered harm that rises to the level of persecution." The attempt to steal vehicles from his wife and his wife's other daughter lacks a connection to the arson or assault, and "there was no mention of [the step-daughter] or the lost load of drugs from January of 2015." The Immigration Judge also noted that

the other threats and messages were connected to the step-daughter, and that the respondent's other family members have not been harmed. For these reasons the Immigration Judge concluded that the "respondent has not demonstrated that similarly situated individuals are persecuted pursuant to a pattern or practice in Mexico."

The Immigration Judge also reasoned that the respondent had not individually shown a well-founded fear of future persecution. The Immigration Judge pointed to the respondent's concession that "he does not know the identities of the individuals who have harassed and threatened his family." This included an admission that the respondent does not know "which cartel these individuals belong to, if they belong to a cartel at all, or how involved they are in the cartel." The Immigration Judge noted that the respondent's fears regarding the cartels "does not have a nexus to his membership in the particular social group consisting of his family" and that a generalized fear of cartels is not a basis for asylum.

The Immigration Judge also denied the respondent's claim for withholding of removal and protection under the Convention Against Torture. The respondent's withholding of removal claim failed for a lack of proof, for largely the same reasons that his asylum claim failed. The Immigration Judge denied the respondent's Convention Against Torture claim because "the respondent has not established that it is 'more likely than not' that he would be tortured if removed to Mexico." He described the respondent's claim that he would be tortured by cartel members as "speculative and not corroborated by objective evidence." No other family members have been tortured. The Immigration Judge also pointed out that the respondent did not receive any threats while in the United States. Furthermore, the Immigration Judge found that the respondent's claim relies "upon a series of speculations" and that he had not met his burden of proof.

## II. ANALYSIS

### A. Standard of Review

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i) (2020). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

An Immigration Judge's finding regarding the motive of the persecutor is a factual issue that is reviewed for clear error. *See Matter of J-B-N- & S-M-*, 24 I&N Dec. 208, 215 (BIA 2007). The Immigration Judge has broad

latitude as to how to interpret the evidence before him. *See Matter of D-R-*, 25 I&N Dec. 445, 454–55 (BIA 2011), *rev'd on other grounds*, *Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015). Moreover, the Board is not permitted to substitute its own view of the evidence on appeal. Clear error exists only where the Immigration Judge's findings "'are illogical or implausible,' or 'without support in inferences that may be drawn from the facts in the record.'" *Matter of A-B-*, 27 I&N Dec. 316, 341 (A.G. 2018) (citations omitted).

## B. Expert Witness

An expert witness is broadly defined as someone who is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see also Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994); *Matter of J-G-T-*, 28 I&N Dec. 97, 100–01 (BIA 2020). An expert has "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Matter of Marcal Neto*, 25 I&N Dec. 169, 176 (BIA 2010) (stating that Immigration Judges may rely on experts "regarding matters on which they possess little or no knowledge or substantive expertise"). The Federal Rules of Evidence are not binding in immigration proceedings. *Matter of D-R-*, 25 I&N Dec. at 458 n.9. Nevertheless, Rule 702 provides a useful guidepost for Immigration Judges in making factual findings. *See Matter of Vides Casanova*, 26 I&N Dec. 494, 499 (BIA 2015). In other words, Immigration Judges must consider whether evidence is probative and fundamentally fair when deciding whether to admit evidence. But the question whether to rely on specific portions of the expert witness testimony for making a factual finding is different. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Expert witness testimony is evidence, but only an Immigration Judge makes factual findings. The question of what probative value or weight to give to expert evidence is a determination for the Immigration Judge to make as the fact finder. *See* 8 C.F.R. § 1003.1(d)(3)(i); *see also United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019) (stating that the finder of fact decides how much weight to give to expert testimony).

Thus, even where, as here, an Immigration Judge finds an expert to be a credible witness, it does not follow that the Immigration Judge must accept all the testimony and opinions provided as facts. Expert witness testimony is evidence and so is treated the same as all evidence in immigration proceedings, where the Immigration Judge is the trier of fact and weighs the evidence in accordance with that role. That said, when the Immigration Judge makes a factual finding that is not consistent with an expert's opinion,

it is important, as the Immigration Judge did here, to explain the reasons behind the factual findings. *Cf. Matter of J-G-T-*, 28 I&N Dec. at 104 ("There is no indication that the Immigration Judge reasonably considered whether the witness's opinion had a sufficient factual basis to essentially establish the respondent's claim.").

The respondent argues that the Immigration Judge denied him due process of law when he gave little weight to the expert witness's opinion in his factual findings. The respondent contends that the Immigration Judge should have given him notice and provided him the opportunity to present additional evidence, relying on *Ren v. Holder*, 648 F.3d 1079 (9th Cir. 2011). We do not agree that *Ren* requires such notice. In that case, the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, concluded that an Immigration Judge needed to inform a credible respondent about the specific corroborating evidence necessary to meet his burden of proof and provide a continuance to obtain the evidence. *Id.* at 1091–92. *Ren* did not address this situation, where the respondent provided an expert witness to establish his claim for asylum. Nothing in *Ren* suggests that the respondent is entitled to a pre-decisional determination about the sufficiency and persuasiveness of the expert testimony.

In the context of an asylum application, a respondent bears the burden of proof. *See* sections 208(b)(1)(B), 240(c)(4)(B) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(B), 1229a(c)(4)(B) (2018). The statute and regulations, moreover, do not contemplate an advisory opinion from an Immigration Judge to the respondent—during the proceedings—as to whether the respondent has submitted sufficient expert evidence to meet his burden of proof. *See* section 208(b)(1)(B)(ii) of the Act; 8 C.F.R. § 1208.13(a) (2020). We are not inclined to fashion such a procedure for expert testimony where it would inevitably require multiple hearings and advisory decisions by an Immigration Judge. *See generally Avelar-Oliva v. Barr*, 954 F.3d 757, 771 (5th Cir. 2020) (holding that an Immigration Judge is not required to give "*advance* notice of the specific corroborating evidence necessary to meet the applicant's burden of proof"); *Liu v. Holder*, 575 F.3d 193, 198 (2d Cir. 2009) (stating that "the alien bears the ultimate burden of introducing such evidence without prompting from the [Immigration Judge]"). The respondent has the obligation to put forth the necessary proof to meet his burden and cannot complain after the fact when he has not satisfied his burden of proof. Accordingly, the Immigration Judge's conduct of the hearing and consideration of the expert testimony did not violate the statute, the regulations, or due process.

C. Asylum

The Immigration Judge denied the respondent's application for asylum because the respondent did not meet his burden of proof regarding nexus. An applicant for asylum must show that "at least one central reason" for the persecution was on account of a protected ground. Section 208(b)(1)(B)(i) of the Act. However, before we address this issue, it is important to resolve two preliminary issues—particular social group and the severity of the harm that the respondent suffered.

The respondent's claim is based on his membership in a particular social group consisting of the family or immediate family members of his step-daughter. As the Attorney General held in *Matter of L-E-A-*, 27 I&N Dec. 581, 586 (A.G. 2019),

> An applicant must establish that his specific family group is defined with sufficient particularity and is socially distinct in his society. In the ordinary case, a family group will not meet that standard, because it will not have the kind of identifying characteristics that render the family socially distinct within the society in question.

We need not remand on the issue of whether the respondent established a cognizable particular social group. This is so because even if the respondent articulated a viable particular social group, he also bears the burden of demonstrating that he was persecuted, or fears persecution, "on account of" that membership in a particular social group. *Reyes v. Lynch*, 842 F.3d 1125, 1136–37 (9th Cir. 2016). We address the "on account of" or nexus issue in detail below, and decide the case on that basis. Regarding the severity of the harm that the respondent suffered, we note that the Department of Homeland Security ("DHS") has acknowledged, on appeal, that the harm rises to the level of past persecution under applicable Ninth Circuit precedent, and so we do not rely on the Immigration Judge's contrary conclusion.

The determinative issue in this case is whether the Immigration Judge clearly erred in finding that there was no nexus between the threatening encounters the respondent has experienced and his membership in a particular social group. *See Matter of A-B-*, 27 I&N Dec. at 343 ("Whether a purported persecutor was motivated by an alien's group affiliation is a 'classic factual question' which the Board may overturn only if 'clearly erroneous.'" (citation omitted)).

The respondent's testimony does not establish a nexus between the harm he suffered and a protected ground. The first incident the respondent testified about was when his family's car was set on fire in front of his mother-in-law's house. No one saw the perpetrators, and the respondent does not know who did it or why. In the second incident, which happened about 3 months later, the respondent was violently assaulted in the parking lot of a

veterinarian while seated in his automobile. The respondent testified that he did not know the man or why he attacked him. The man told the respondent he should know him, stating, "You stole from me."

The respondent's testimony regarding these incidents does not establish clear error in the Immigration Judge's findings regarding the motive of the assailant. The primary flaw in the respondent's "theory" of the attack— retribution for his step-daughter's drug delivery failure—is that it is not consistent with the respondent's interaction with the assailant. The assailant's insistence that the respondent should recognize him because the respondent stole from him does not support a connection between this event and his step-daughter's drug delivery failure. The Immigration Judge's factual findings regarding motive are not clearly erroneous. *See Rodriguez v. Holder*, 683 F.3d 1164, 1170 (9th Cir. 2012) (stating that an Immigration Judge's factual findings are clearly erroneous only if they are illogical or implausible).

The respondent also claims that the Immigration Judge's factual findings are clearly erroneous based on the expert witness's testimony. As discussed above, an expert's testimony is evidence, but not conclusive fact. The Immigration Judge is charged with making factual findings. On appeal, in order to prevail, the respondent must establish that the Immigration Judge's findings are clearly erroneous.

The expert witness tied the assault against the respondent to his step-daughter's loss of the drug load. The Immigration Judge, however, provided ample reasons not to make this connection, and his factual findings are well supported. The Immigration Judge did not clearly err in declining to accept the witness's conclusion that the man who assaulted the respondent was the same person who gave his step-daughter the drugs for transport. The witness based this "match" on the verbal descriptions provided to him by the respondent and his step-daughter. The problem, as the Immigration Judge found, was that the descriptions were so general that they applied to many men in Mexico. There were no distinctive or special characteristics that supported a definitive match based on the verbal description. Furthermore, the witness's testimony regarding the "match" is not part of his purported expertise. As a former law enforcement agent, the expert witness does have some experience with descriptions, but that is not his claimed expertise. *See Matter of J-G-T-*, 28 I&N Dec. at 103 (discussing the importance of clearly establishing a witness's area of expertise).

The Immigration Judge also provided adequate reasons for not accepting the witness's claim that the respondent's step-daughter was working for the DEA. While her conviction for a drug offense was verified, the witness was not able to confirm that she was working with DEA (and to describe the scope and extent of the relationship) or to corroborate other aspects of her story.

Indeed, the Immigration Judge noted other plausible reasons that the respondent's step-daughter may not have received a long jail sentence, none of which were refuted by the respondent. Furthermore, she did not testify despite being the key percipient witness in this theory. While expert testimony can serve an important role in immigration cases, it cannot be a substitute for important fact witnesses who are otherwise available to testify or provide a declaration.

The Immigration Judge also noted that the witness's theory was undermined by certain aspects of the "relationship" between the respondent and his step-daughter. Indeed, the relationship was not particularly close. The respondent married her mother only 6 months prior to her arrest, she never visited the respondent and his wife at their home, and the respondent had no awareness of her arrest until the expert witness told him. Without additional evidence to support the respondent's theory, the Immigration Judge's factual findings are not clearly erroneous.

The respondent now tries to rely on a new timeline, arguing that it was his step-daughter's conviction in October 2015 that precipitated the threats, rather than the January 2015 arrest and loss of the drug load, which provides a much more compressed period of time before the first incident against the respondent in February 2016. This argument was not presented before the Immigration Judge or in the respondent's opening or supplemental brief on appeal. Moreover, the respondent's expert witness did not advocate this theory in his testimony. Even a more compressed time frame, however, does not make the Immigration Judge's motive finding clearly erroneous where the respondent did not identify the motive of the arsonist or his assailant, and there are significant gaps between his step-daughter's activities and the connection to the respondent. Furthermore, this new "timeline" theory does not establish that the Immigration Judge clearly erred in finding a lack of nexus to a protected ground.

In the absence of past persecution on account of a protected ground, there is no presumption of a well-founded fear of persecution. As to a well-founded fear of persecution, the Immigration Judge concluded that the respondent's fear on account of a protected ground was not objectively reasonable. Other family members remain safe in Mexico, further indicating that the respondent does not have an objectively reasonable fear of harm on account of his family membership. *See Santos-Lemus v. Mukasey*, 542 F.3d 738, 743–44 (9th Cir. 2008) (explaining that where an applicant's claim of future persecution is based on family membership, the fact that family members remain unharmed in the home country undermines the claim), *abrogated on other grounds*, *Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) (en banc); *see also, e.g.*, *Aruta v. INS*, 80 F.3d 1389, 1395 (9th Cir. 1996) (collecting cases).

In addition, the attacks occurred near the respondent's home, and there is insufficient evidence that he could not safely relocate to another part of Mexico. *See* 8 C.F.R. § 1208.13(b)(2)(ii). The respondent has the burden of proving that such relocation would not be possible or reasonable. *See* 8 C.F.R. § 1208.13(b)(3)(i); *see also Recinos De Leon v. Gonzales*, 400 F.3d 1185, 1190 (9th Cir. 2005). There is no clear error in the Immigration Judge's factual findings relating to this issue. For all these reasons, the respondent has not established past persecution or a well-founded fear of future persecution on account of a protected ground.

## D. Withholding of Removal

At oral argument, the respondent, while acknowledging that the Immigration Judge cited *Barajas-Romero v. Lynch*, 846 F.3d 351, 358–60 (9th Cir. 2017), argued for the first time that the Immigration Judge applied the wrong standard to his application for withholding of removal under section 241(b)(3)(A) of the Act, 8 U.S.C. § 1231(b)(3)(A) (2012). The respondent did not raise this issue in his opening brief. Furthermore, in his supplemental brief, he expressly declined to address any issue relating solely to withholding of removal, stating that he "does not address, explicitly, the [Immigration Judge's] denial of his application for withholding of removal, as he believes remand for correction of the [Immigration Judge's] errors as to asylum and Convention Against Torture protection will necessarily involve a remand for correction of the errors in the withholding of removal denial." The respondent thus conceded that there was no separate and independent ground to remand that related solely to the withholding of removal claim. We will not consider this issue any further because the respondent has waived it. *See Matter of R-A-M-*, 25 I&N Dec. 657, 658 n.2 (BIA 2012) (stating that failure to raise an issue constitutes a waiver of the claim); *cf. Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) (concluding that, pursuant to the Federal Rules of Appellate Procedure, failure to raise an issue in an opening brief constitutes a waiver).

## E. Convention Against Torture

Finally, based on the entirety of the record, we agree, for the reasons stated by the Immigration Judge, that the respondent has not shown that he is more likely than not to be tortured by or with the consent or acquiescence of a public official or person acting in an official capacity in Mexico and, thus, is not eligible for protection under the Convention Against Torture. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1) (2020). No clear error exists in the Immigration Judge's finding that it is not more likely than not that the

respondent will be tortured.  *See Ridore v. Holder*, 696 F.3d 907, 919, 921–22 (9th Cir. 2012) (holding that an Immigration Judge's determination of whether an alien will more likely than not be subject to torture is a predictive finding of fact subject to clear error review).

Accordingly, the respondent's appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation.  *See* Section 274D of the Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2020).